### A00A2054. HUNT v. THE STATE.
(542 SE2d 591)

MIKELL, Judge.

Steven L. Hunt was charged with driving under the influence of alcohol to the extent that he was a less safe driver ("DUI"), obstruc-

---

tion of an officer, driving with an open container, following another automobile too closely, having no proof of insurance and driving without a license. At trial, Hunt admitted his guilt in all of the charges except DUI and obstruction of an officer. The trial court directed a verdict of acquittal on the obstruction charge, and the jury returned a guilty verdict on the remaining counts. Hunt appeals his DUI conviction, contending that the evidence was insufficient, that the trial court erred in admitting certain evidence and by improperly expressing its opinion to the jury and that he was denied effective assistance of counsel. We find no merit in these contentions and affirm the judgment.

1. First, Hunt contends that the evidence at trial was insufficient to sustain his conviction of driving under the influence of alcohol to the extent that it was less safe for him to drive. OCGA § 40-6-391 (a) (1).

On appeal, Hunt no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to support the verdict. *Paul v. State*, 231 Ga. App. 528 (499 SE2d 914) (1998). Our review is limited to determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Williams v. State*, 233 Ga. App. 217 (1) (504 SE2d 53) (1998).

So viewed, the evidence shows that on August 18, 1996, at approximately 1:30 a.m., Hunt's vehicle struck the rear of Addie Kirkland's car, which was stopped at a red light. Kirkland testified that the force of the impact caused her car to strike the car in front of her, which was also stopped at the light. Kirkland further testified that Hunt attempted to drive around her car, but he struck it again. According to Jacob Grant, a passenger in the vehicle struck by Kirkland, Hunt attempted to leave the scene, but Grant stopped him and escorted him back to his car. Next, Hunt again fled the scene, jumping two fences before he was apprehended by Corporal Keith Sisco of the Savannah Police Department.

Corporal Sisco testified that Hunt smelled of alcohol, was unsteady on his feet and had bloodshot eyes. Two open containers of beer were discovered in Hunt's vehicle. At trial, Hunt admitted consuming alcohol prior to the accident.

After Hunt's arrest, Corporal Gregory S. Ernst read him the implied consent notice, and Hunt agreed to submit to breath testing. Corporal Sisco testified that when Corporal Ernst attempted to administer the test, Hunt pretended to blow into the instrument by puffing out his cheeks, but that he failed to "fog up" the tube. According to Corporal Ernst, Hunt suggested that the instrument was not working properly; however, the officer successfully completed a test cycle. Corporal Ernst again attempted to administer the test, but

Hunt gave a series of small puffs that were insufficient to register on the instrument, despite the officer's repeated instructions to exhale continuously. Hunt was charged with DUI by refusal to submit to testing.

We conclude that the evidence clearly supports the jury's verdict and would enable any rational trier of fact to find Hunt guilty of driving under the influence of alcohol to the extent that he was a less safe driver. See *Harding v. State*, 242 Ga. App. 609, 610 (530 SE2d 514) (2000).

2. Next, Hunt argues that the trial court erred in denying his pretrial motion to permit the jury to test the Intoxilyzer 5000. Hunt requested that the jurors "be allowed to blow into said breath machine" in order for them to determine "the volume of air and breathing effort required to operate such a machine."

It is well settled that "[g]enerally, whether courtroom demonstrations will be permitted rests within the sound discretion of the trial court." *Grant v. State*, 239 Ga. App. 608, 611 (3) (521 SE2d 654) (1999). Appellate courts will not interfere with the admission of evidence absent an abuse of that discretion. *Hartman v. Shallowford Community Hosp.*, 219 Ga. App. 498, 501 (3) (466 SE2d 33) (1995). It is certainly within the trial court's discretion to deny a request that the jury conduct its own experiment. Hunt has failed to establish an abuse of discretion in the court's denial of the motion.

3. Hunt enumerates as error the court's admission of evidence of his refusal to submit to breath testing. We conclude, however, that the court did not err in admitting such evidence.

OCGA § 40-6-392 (d) provides that "[i]n any criminal trial, the refusal of the defendant to permit a chemical analysis to be made of his . . . breath . . . at the time of his arrest shall be admissible in evidence against him." Hunt argues that he did not refuse to submit to testing; rather, he was unable to provide a sample.

In two cases involving similar facts, we held that evidence of a defendant's failure to provide an adequate breath sample was admissible to demonstrate a refusal to submit meaningfully to testing. *Komala v. State*, 237 Ga. App. 236, 237 (2) (515 SE2d 185) (1999); *Allen v. State*, 229 Ga. App. 435, 437-438 (1) (494 SE2d 229) (1997). "Unless encumbered by a physical or medical limitation, a person submitting to the breathalyzer test may be considered to have refused to comply if an adequate breath sample has not been provided." *Komala*, supra, 237 Ga. App. at 237 (2). An adequate breath sample is defined in OCGA § 40-6-392 (a) (1) (B) as "a breath sample sufficient to cause the breath-testing instrument to produce a printed alcohol concentration analysis."

Hunt contends that he failed to provide an adequate sample because he suffers from Bell's palsy and because he hit his head in

the accident. We conclude, however, that Hunt failed to meet his burden of establishing that he was unable to provide an adequate breath sample due to a medical condition. See *Bartnick v. State*, 203 Ga. App. 369, 370 (416 SE2d 739) (1992). Hunt testified that he suffers from Bell's palsy; however, he did not present the testimony of a physician or any medical evidence of the effect the disorder might have on his ability to produce an adequate breath sample. Similarly, Hunt did not present any medical evidence that hitting his head on the windshield rendered him unable to submit meaningfully to the test.

Furthermore, evidence of Hunt's behavior and medical condition immediately following the accident contradicts his argument that he was unable to provide a breath sample. Witnesses testified that Hunt was able to run from the scene of the accident twice and to jump two fences. The police officers testified that Hunt refused medical treatment at the scene of the accident, and that he was taken to the hospital where he was examined and released. At the time Corporal Ernst administered the test, Hunt told the officers that he did not have any medical conditions that would interfere with his ability to perform a breath test.

Based on Hunt's failure to establish his medical inability to provide an adequate breath sample and on evidence of his behavior following the accident, we conclude that the trial court did not abuse its discretion in admitting evidence of Hunt's refusal to submit to the test.

4. In a related argument, Hunt contends that the court erred in admitting any evidence of the breath test, alleging that the state failed to show that the Intoxilyzer 5000 was in proper working order. We disagree.

OCGA § 40-6-392 (a) (1) (A) provides that, in order for evidence of chemical analysis of a person's breath to be admissible,

> [the] analysis . . . shall have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation on a machine . . . in good working order and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose.

In the case sub judice, the state presented evidence that use of the Intoxilyzer 5000 has been approved by the Georgia Bureau of Investigation and certification that the instrument was in good working order at the time of Hunt's attempted test. Furthermore, Corporal Ernst possessed a valid permit to operate the Intoxilyzer 5000. Thus, because the state met all of the statutory requirements, the trial court did not err in admitting evidence of the officers' attempt to

test Hunt's breath.

5. Next, Hunt argues that the trial court erred by improperly expressing its opinion when it instructed the jury on the law of implied consent. Specifically, during cross-examination of Corporal Ernst, the court instructed the jury as follows in overruling a defense objection:

> Well, I think yours has been a misstatement of the law, too, counselor, in your questioning. I will instruct the jury at this time that the law says that the police officer may make the designation of what test shall be made, and he only has to make one request. Whatever he designates, that is the one the defendant has to take, under the law. If he fails to take it, under the circumstances, then he has refused. He has no right to another test until he takes the first test requested by the officer. That's the law.

According to OCGA § 17-8-57, it is error for a judge to "express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." Until a recent Supreme Court decision, the question of whether OCGA § 17-8-57 has been violated would not be reached on appeal unless an objection or motion for mistrial was made. *Lucas v. State*, 197 Ga. App. 347 (1) (398 SE2d 417) (1990). Hunt made no such objection or motion; therefore, technically this issue has not been preserved for appeal. See id. See also *Miller v. State*, 180 Ga. App. 525 (349 SE2d 495) (1986); *Thomas v. State*, 158 Ga. App. 97, 98 (2) (279 SE2d 335) (1981).

However, in a recent opinion, *Paul v. State*, 272 Ga. 845 (537 SE2d 58) (2000), the Supreme Court held that when a judge expressed his opinion of a case in violation of OCGA § 17-8-57, the reviewing court should apply the plain error rule to determine whether the court had committed an obvious error even if the defendant failed to preserve the issue by objecting or moving for a mistrial. Before *Paul*, the Supreme Court had applied the plain error rule only to death penalty cases; however, with that decision it extended the rule to all criminal cases. Therefore, despite counsel's failure to preserve this issue, we must consider whether the court violated OCGA § 17-8-57 and, if so, whether the violation constituted an obvious error or one that "seriously affect(ed) the fairness, integrity, and public reputation of these judicial proceedings." *Paul*, supra at 849, citing *Almond v. State*, 180 Ga. App. 475, 480 (349 SE2d 482) (1986).

We need not reach the plain error analysis in this case, however. Contrary to Hunt's argument, the court's instruction was not an improper expression of its opinion of the case; rather, it was an accurate statement of the law. OCGA §§ 40-5-67.1; 40-6-392. See *Lucas*,

supra. Unlike the judge in *Paul* who "intimated his opinion as to the credibility of witnesses and the guilt of the defendant," the court in the case sub judice simply instructed the jury on the applicable law without commenting on the evidence or the guilt of the defendant. Furthermore, at the close of the trial, the judge charged the jury that

> [n]othing I have said or done at any time during the trial is to be considered by you as evidence of any fact or as indicating any opinion concerning any fact, the credibility of any witness, the weight of any evidence, or the guilt or innocence of this defendant.

Thus, the court did not violate OCGA § 17-8-57.

6. Finally, Hunt argues that he was denied effective assistance of counsel. The jury convicted Hunt on June 13, 1997, and counsel filed a notice of appeal that day. Hunt's trial counsel withdrew on January 26, 1998. Hunt has pursued this appeal pro se. Thus, this appeal presents his first opportunity to raise this claim. Normally, we remand claims of ineffective assistance of counsel to the trial court for a hearing; however, we find remand unnecessary in this case, because, as a matter of law, the record does not support Hunt's assertions. See *Halthon-Howard v. State*, 234 Ga. App. 229, 231 (2) (506 SE2d 415) (1998).

In order to establish ineffective assistance of counsel, Hunt must both show that his trial counsel's performance was deficient and establish a likelihood that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Zant v. Moon*, 264 Ga. 93, 97 (2) (440 SE2d 657) (1994). Trial counsel is presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment, and judicial scrutiny of counsel's performance must be highly deferential. *Pace v. State*, 239 Ga. App. 506, 510 (7) (521 SE2d 444) (1999).

Hunt contends that his trial counsel was deficient in selecting three jurors. First, Hunt argues that counsel's selection of juror Patricia Bynes constituted deficient performance; however, the record shows that Bynes stated during jury selection that she did not think she could sit in judgment of another person. Such a response could certainly be interpreted as favorable to the defense.

Next, Hunt challenges counsel's selection of juror Colleen Melton because she has donated money to Mothers Against Drunk Driving ("MADD") and had a brother who was killed in a drunk driving accident. While such responses may render her a questionable choice for the defense, the record also reflects that Melton has three friends who have been charged with DUI. The fact that Melton has personal

relationships with individuals who have been charged with DUI was arguably favorable to the defense.

Finally, Hunt argues that counsel's performance was deficient in selecting juror Francis Alegretti, because he had made a donation to MADD. We note, however, that Alegretti also said that he felt he could be a fair and impartial juror.

Accordingly, we conclude that Hunt has failed to demonstrate that counsel's performance during jury selection was deficient. Because Hunt has failed to demonstrate deficient performance, we need not reach the issue of whether such performance prejudiced the defense.

Furthermore, it is well settled that "[t]he decisions on . . . what jurors to accept or strike . . . and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client." (Punctuation omitted.) *Thompson v. State*, 191 Ga. App. 906 (1) (383 SE2d 339) (1989), citing *Austin v. Carter*, 248 Ga. 775, 779 (285 SE2d 542) (1982). We have also held that "[c]ounsel's decisions on matters of tactic and strategy, even if unwise, do not amount to ineffective assistance of counsel." *Scott v. State*, 238 Ga. App. 258, 260 (2) (518 SE2d 468) (1999).

Therefore, we conclude that counsel's performance did not fall outside the wide range of reasonable professional judgment, and we will not judge his trial strategy in hindsight. *Lee v. State*, 199 Ga. App. 246, 247 (3) (404 SE2d 598) (1991).

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 21, 2000 —
RECONSIDERATION DENIED JANUARY 5, 2001 — 

Steven Hunt, *pro se.*

*Spencer Lawton, Jr., District Attorney, Allison E. Bailey, Assistant District Attorney*, for appellee.