## A07A0354. VEGA v. THE STATE.
(646 SE2d 501)

RUFFIN, Judge.

After a jury trial, Mario Vega was found guilty of kidnapping with bodily injury, aggravated assault with a deadly weapon, aggravated battery, possession of a firearm during the commission of a felony, five counts of armed robbery, four counts of kidnapping, and four counts of aggravated assault.[1] The trial court denied his motion for a new trial, and Vega appeals. Finding no error, we affirm.

Viewed in a light favorable to the verdict,[2] the evidence shows that on the morning of July 7, 2003, Vega and others went to a warehouse that housed a flea market with a plan to commit robbery. They were armed and wearing masks. Persons at the warehouse were forced into a stall and robbed; several were kicked and struck with guns. One customer was struck in the head, restrained with tape, and robbed. The perpetrators filled bags with merchandise from the flea market and loaded the bags into a van. One of the perpetrators shot a vendor in the face with a shotgun, severely injuring him.

Law enforcement was alerted while the robbery was in progress and surrounded the warehouse. The perpetrators fled the warehouse, but were quickly captured. Officer Wilson saw Vega running and stopped him approximately a block and a half from the warehouse. Officer Wilson found a shotgun shell, three watches, and money in Vega's pocket.

The trial court denied Vega's motion to suppress the shotgun shell and watches. Two of Vega's co-defendants testified at trial and described his involvement in the crimes charged. On appeal, Vega asserts that: (1) the trial court erred in admitting evidence discovered as a result of an illegal detention and search; and (2) he received ineffective assistance of counsel.

1. Vega argues that the motion to suppress evidence should have been granted because he was illegally detained and searched. We will uphold a trial court's decision on a motion to suppress if there is any evidence to support it, and we construe the evidence favorably to the trial court's findings.[3] In this case, the police were notified of a robbery in progress, observed spent shotgun shells outside the warehouse, and saw several individuals running from a back door of the warehouse. A description of the individuals was given over the police radio, and Officer Wilson, who was in the immediate area, saw "two

---

[1] Vega was indicted with three other co-defendants, including William McCoy. Accordingly, some of the facts and analysis herein are duplicative of those in *McCoy v. State*, 285 Ga. App. 246 (645 SE2d 728) (2007).

[2] See *Forde v. State*, 277 Ga. App. 410 (626 SE2d 606) (2006).

[3] See *Underwood v. State*, 266 Ga. App. 119 (596 SE2d 425) (2004).

males running matching the description that was given over the radio." He was able to stop one of the males, Vega.

An arrest is valid if, at the time it was made, the officer had probable cause to make it; that is, if at the time of the arrest, "the facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that a suspect had committed or was committing an offense."[4] Flight from the scene of a crime may constitute sufficient probable cause for an arrest under certain circumstances.[5] We disagree with Vega's contention that there were no facts justifying his arrest and that this was, at best, a *Terry* pat-down. Here, Vega's presence at the scene of an ongoing robbery, coupled with his flight from police, justified his arrest, and we therefore affirm the trial court's denial of his motion to suppress.[6]

2. Vega asserts that he received ineffective assistance of counsel because his trial counsel failed to: remove biased jurors from the panel; object to the admission of the shotgun shell and watches that were the subject of the motion to suppress; and properly address material inconsistencies in one co-defendant's testimony. In order to establish ineffective assistance of counsel, Vega must show both that his counsel's performance was deficient and that there is a reasonable probability that the outcome of the trial would have been different but for counsel's deficient performance.[7] We affirm a trial court's ruling on a claim of ineffective assistance of counsel unless that ruling is clearly erroneous.[8]

(a) Vega argues that his trial counsel should have used peremptory strikes to remove from the jury three jurors who allegedly "indicated that they were not perfectly impartial, and were unable to be fair." Vega and his co-defendant shared twelve peremptory strikes, with the result that each would be able to remove six jurors unless they could agree on which twelve to remove. The defendants used nine peremptory strikes in selecting the jury and three in selecting the alternates. The three jurors about whom Vega now complains were seated. At the hearing on Vega's motion for new trial, trial counsel testified that her decision to strike particular jurors was strategic and was based on "the total array of people we had left after jurors had been struck for cause. It would depend on what those

---

[4] *Fleming v. State*, 282 Ga. App. 373, 375 (1) (638 SE2d 769) (2006).

[5] See *Mitchell v. State*, 200 Ga. App. 146, 147 (1) (407 SE2d 115) (1991).

[6] See *Carreno v. State*, 272 Ga. App. 229, 230 (1) (b) (612 SE2d 62) (2005); *Underwood*, supra.

[7] See *Abernathy v. State*, 278 Ga. App. 574, 580 (3) (630 SE2d 421) (2006).

[8] See *Giddens v. State*, 276 Ga. App. 353, 356 (3) (623 SE2d 204) (2005).

answers were to the particular questions as to who we decided we [did not] want or who was the greater evil than the ones that were left."

Vega does not challenge the trial court's failure to excuse these three jurors for cause. Instead, he argues that their answers to voir dire should have led trial counsel to strike the jurors rather than saving the strikes for others who, according to Vega, were less problematic. Trial counsel's decisions about which jurors to strike and which to keep are tactical.[9] And "counsel's decisions on matters of tactic and strategy, even if unwise, do not amount to ineffective assistance of counsel."[10] Indeed, tactical decisions by counsel will not form the basis for an ineffective assistance claim unless the decisions are "so patently unreasonable that no competent attorney would have chosen them."[11] Here, where the jurors at issue all expressed certain reservations about the subject matter of the case but upon further questioning stated that they could be fair and impartial, we cannot conclude that trial counsel's decision to use the available strikes as she did was so patently unreasonable that no competent lawyer would have done the same. Accordingly, the trial court's denial of Vega's claim of ineffective assistance on this ground was not clearly erroneous.[12]

(b) Vega contends that trial counsel should have objected at trial to the admission of the shotgun shell and watches that Vega had unsuccessfully sought to suppress. As we held in Division 1, the trial court properly denied Vega's motion to suppress the evidence; accordingly, trial counsel's failure to make a meritless objection will not support a claim of ineffective assistance.[13]

(c) Vega alleges that trial counsel was deficient in failing to emphasize "glaring inconsistencies" in the testimony of co-defendant Tyrell Crossland. Crossland identified Vega in court and testified that he was a participant in the robbery. The two inconsistencies cited by Vega are: that Crossland first testified that Vega and McCoy were not present at a meeting where the robbery was planned, then testified that they were present; and that Crossland indicated at trial that he had known Vega for five or six years, but said in his statement to police that he had known him only "a couple of weeks." Trial counsel, however, cross-examined Crossland on both of these topics. In fact, Crossland admitted during cross-examination by Vega's counsel that he had lied in his statement to police about how long he

---

[9] See *Hunt v. State*, 247 Ga. App. 464, 469 (6) (542 SE2d 591) (2001).

[10] (Punctuation omitted.) Id. at 470 (6).

[11] (Punctuation omitted.) *Hollman v. State*, 280 Ga. App. 53, 58-59 (2) (a) (633 SE2d 395) (2006).

[12] See *Rutledge v. State*, 237 Ga. App. 390, 392 (2) (515 SE2d 1) (1999).

[13] See *Cole v. State*, 279 Ga. App. 219, 225 (8) (b) (630 SE2d 817) (2006).

had known Vega, and that he had left the meeting out of his statement entirely. And in her closing argument, trial counsel discussed Crossland's inconsistent statements about how long he knew Vega and argued that Crossland had made a plea deal with the State and was generally unreliable.

Again, "matters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel."[14] Moreover, defense counsel is given wide latitude in making closing arguments, and we "will not, with benefit of hindsight, second-guess defense trial strategies in closing arguments."[15] Under these circumstances, where trial counsel addressed the inconsistencies in Crossland's testimony and Vega merely disagrees with the methods by which she did so, the trial court did not err in denying Vega's ineffective assistance claim on this ground.[16]

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED MAY 16, 2007.

*Lawrence Lewis*, for appellant.

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.

---

[14] (Punctuation omitted.) *Fuller v. State*, 278 Ga. 812, 814-815 (2) (c) (607 SE2d 581) (2005).

[15] *Cooper v. State*, 281 Ga. 760, 763 (4) (c) (642 SE2d 817) (2007).

[16] See *Fuller*, supra; *Hooks v. State*, 280 Ga. 164, 165-166 (3) (626 SE2d 114) (2006).