A08A1528. BAKER v. THE STATE.

(671 SE2d 206)

ADAMS, Judge.

Christopher Baker appeals following his conviction on multiple counts of rape, aggravated sodomy, kidnapping, theft by taking and possession of a firearm during the commission of a felony.

Viewed in the light most favorable to support the verdict, the evidence showed that in May 1998, after A. T. got into Baker's car, he drove her to an abandoned building and forced her to have sex. He then drove off with A. T.'s purse still in his car, abandoning her. The next month he drove R. B. to a deserted area and forced her to have vaginal and oral sex. On or about May 26, 1999, Baker drove P. J. to an area near Bankhead Highway where he forced her to have vaginal and anal sex with him, and then kicked her out of the car, taking her purse with him. Then in December 2000, he drove N. H. behind a school and forced her to have sex at knifepoint. In April 2002, Baker forced C. M. into his car at gunpoint. He drove her to a truck stop where he had vaginal and anal sex with her, then forced her to commit oral sex. Baker hit C. M. in the face, took her ring and other items out of her purse, before pushing her out of the car. K. M. was walking home on October 29, 2002, when Baker blocked her path, showed her a gun and forced her into his car. He drove her to a muddy field where he forced her to commit oral sex and then vaginal and anal sex. Baker then took her necklace, money and cell phone.

Baker testified that he had consensual sex with all the women. He described these encounters as his engaging the services of a prostitute, paying for the services, then taking the money back and kicking the woman out of his car. He also denied taking K. M.'s belongings.

1. Baker first asserts that the trial court erred in denying his motion to suppress. In reviewing a trial court's denial of a motion to

suppress, this Court defers to the trial court's findings of disputed facts but reviews de novo the court's application of the law to the undisputed facts. *Petty v. State*, 283 Ga. 268, 269 (2) (658 SE2d 599) (2008); *State v. Nash*, 279 Ga. 646, 648 (2) (619 SE2d 684) (2005).

At the hearing on the motion to suppress, Officer J. J. O'Brien of the Atlanta Police Department testified that he was the sex crimes investigator on call on October 29, 2002, when he was summoned to the Atlanta Medical Center to meet K. M. She told him that she had been raped and gave a description of her attacker and his car. K. M. said that her cell phone and some jewelry had been taken from her during the incident. O'Brien asked K. M. to contact her cell phone company to see if any phone calls had been made. Pursuant to a subpoena, police learned that a call had been made to an address in Riverdale listed under Baker's name. O'Brien ran a criminal history on Baker, and determined that he fit the description of the perpetrator given by K. M. Later, O'Brien rode by the address on the phone records and saw a vehicle matching K. M.'s description. Subsequently, police prepared a photographic lineup for K. M.'s review, and she identified Baker as the man who raped her. The State concedes that this lineup was illegal.

Baker was subsequently arrested. O'Brien prepared the arrest warrant, and testified that it contained K. M.'s description of the attack and listed Baker as the perpetrator.[1] Although he waited until after K. M.'s photo identification to seek the warrant, the warrant did not specifically reference the lineup. O'Brien stated that he believed that he had probable cause, without the lineup, based upon the cell phone information, K. M.'s description and his observation of a car matching her description at Baker's residence.

Several days after the arrest, police obtained a search warrant for Baker's residence. That warrant referenced K. M.'s identification of Baker from the photographic lineup, in addition to her description of events, O'Brien's observation of the car at Baker's residence, and the fact that Baker had been arrested for the crime. During the search of the residence, police found a phone matching K. M.'s description of the items taken from her during the attack. The phone had a distinctive dollar bill marking on it and was pre-programmed with the numbers K. M. told police would be on her phone. In addition, police found a gold necklace, which K. M. identified as hers. Subsequently, police obtained a warrant to obtain a sample of

---

[1] The parties do not provide a record cite for the arrest warrant or the search warrant for Baker's residence, nor did a search of the record reveal a copy of these warrants. But the warrants were produced at the hearing and O'Brien testified as to their contents. Baker's counsel thoroughly cross-examined O'Brien on the warrants and Baker does not dispute his description.

Baker's blood. O'Brien did not participate in the preparation of the warrant for Baker's blood sample, and the State did not produce a copy of that warrant or testimony from the officer providing the affidavit at the hearing. DNA obtained from Baker's blood sample matched that of K. M.'s attacker.

Baker asserted as the basis for his motion to suppress:

> That on or about January 14, 1999, the defendant was placed under arrest pursuant to an arrest warrant. This arrest warrant was based on a photographic line-up in which the defendant was picked out by the alleged victim. Defendant contends and the State concedes that such photographic line-up was [done] in violation of . . . defendant's rights. That without the identification of the defendant in the photographic line-up, there would have been no probable cause to arrest defendant. Accordingly, the subsequent search warrant for defendant's blood was based on the illegal arrest which was based on the illegal photo line-up. Therefore, any evidence gathered as a result of such search warrant should be suppressed as fruits of the poisonous tree. It therefore follows that any results based on the illegal seizure of defendant's blood should also be suppressed.

In addition, Baker argued at the hearing that the search warrant issued for his home was illegal as it, too, was based upon the tainted identification, and thus the evidence seized pursuant to that warrant must also be suppressed.

We must determine, therefore, whether police had probable cause to arrest Baker and to obtain search warrants for his home and a blood sample without the photographic lineup or whether the existence of that lineup so tainted the proceedings as to render the evidence gathered inadmissible. Baker did not challenge the warrants on any other ground.

(a) *Arrest* — "The facts necessary to establish probable cause for arrest are much less than those required to prove guilt beyond a reasonable doubt at trial; the test merely requires a probability — less than a certainty but more than a mere suspicion or possibility." (Citation, punctuation and footnote omitted.) *Murphy v. State*, 286 Ga. App. 447, 448 (649 SE2d 565) (2007).

> Probable cause exists if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent

man in believing that the accused had committed or was committing an offense.

(Footnote omitted.) *State v. Tyson*, 273 Ga. 690, 693 (3) (544 SE2d 444) (2001).

Police knew that K. M.'s phone had been taken by her attacker; the phone had been used to call Baker's house after the attack; Baker fit the description she had given of her attacker; and a car matching her description was at his house. We find that these facts, without reference to K. M.'s identification, established sufficient probable cause to support his arrest. See *Singleton v. State*, 195 Ga. App. 119, 121 (1) (393 SE2d 6) (1990). We note, moreover, that the affidavit seeking an arrest warrant did not reference K. M.'s identification. Thus, there was nothing illegal about the affidavit on its face.

(b) *Search of Residence* — Next we must determine whether the magistrate was presented with facts "sufficient to show probable cause that a crime is being committed or has been committed" to support the search of Baker's home. OCGA § 17-5-21 (a).

> The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Our duty in reviewing the magistrate's decision in this case is to determine if the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search warrants.

(Citations and punctuation omitted.) *Sullivan v. State*, 284 Ga. 358, 360-361 (2) (667 SE2d 32) (2008). "On review, this Court is limited to determining if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant, and must afford substantial deference to the magistrate's decision." (Punctuation omitted.) *Fair v. State*, 284 Ga. 165, 171 (3) (b) (664 SE2d 227) (2008).

Unlike the affidavit supporting the arrest warrant, however, the affidavit supporting the search warrant did mention K. M.'s identification of Baker from the illegal photographic lineup. Therefore, we must omit evidence of that lineup in considering whether the information in the affidavit established sufficient probable cause to

support a search of Baker's home:

> When an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue. If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admissible.

(Citation omitted.) *State v. Pando*, 284 Ga. App. 70, 76 (2) (a) (643 SE2d 342) (2007). See also *Bius v. State*, 254 Ga. App. 634, 638 (4) (563 SE2d 527) (2002). We find that, putting the tainted lineup aside in this case, the remaining information, including Baker's arrest, was sufficient to show a "fair probability" that evidence of the crime would be found in Baker's residence and thus provided the required probable cause. "By no means is probable cause to be equated with proof by even so much as a preponderance of evidence. Probable cause does not demand the certainty we associate with formal trials." (Citation and punctuation omitted.) *Brown v. State*, 292 Ga. App. 269, 275-276 (2) (663 SE2d 749) (2008).

(c) *Blood Sample* — Baker contests the denial of his motion to suppress evidence obtained from the warrant seeking a blood sample on two grounds: (1) that, as articulated in his motion, this search was the fruit of the poisonous tree of his illegal arrest stemming from the illegal photographic lineup; and (2) the failure of the State to carry its burden on this motion by producing a copy of the affidavit and warrant for the blood sample at the motion hearing. As we have found that sufficient probable cause existed to support Baker's arrest (and the search of his home), without reference to the photographic lineup, we find no merit to the first ground.

Baker nevertheless asserts that the State had the burden to show that the search warrant for the blood sample was valid and to meet that burden, it was required to produce the search warrant and supporting affidavit at the motion hearing. Baker is correct that when a defendant files a motion to suppress under OCGA § 17-5-30, the State bears the burden of showing the legality of the search and can meet that burden by producing the warrant and affidavit:

> When a motion to suppress is made . . . , challenging the validity of a search and seizure with a warrant, the burden of showing that the search and seizure were lawful shall be on the state. This burden upon the state is satisfied by produc-

tion of the warrant and its supporting affidavit, and by showing either by those documents or by other evidence that the warrant is not subject to the statutory challenge alleged (i.e., the warrant is sufficient on its face, there was probable cause for its issuance, or the warrant was legally executed).

(Citation, punctuation and emphasis omitted.) *Bowman v. State*, 205 Ga. App. 347, 348 (422 SE2d 239) (1992). But Baker raised no issue below regarding either the existence of the warrant for his blood sample or the adequacy of the supporting affidavit. His sole argument attacking the validity of that warrant was that it was the fruit of the poisonous tree of what he contends was an illegal arrest. This argument attacks the validity of the original arrest warrant. The record demonstrates that not only did the State introduce a copy of that warrant and the supporting affidavit, but it also produced the officer who prepared that warrant at the motion hearing. Baker's counsel thoroughly cross-examined the officer. Although the better practice certainly would have been to produce the search warrant and affidavit for the blood sample, we find that under the circumstances, the State met its burden. See generally *Young v. State*, 282 Ga. 735, 737 (653 SE2d 725) (2007) (defendant has obligation to state in motion to suppress "why the search and seizure were unlawful, so as to afford notice of the legal issues which will be before the trial court"); *Colon v. State*, 275 Ga. App. 73, 81 (7) (a) (619 SE2d 773) (2005) (in absence of warrant and affidavit court can look to testimony for evidence to support search). See also *Davis v. State*, 266 Ga. 212, 213 (465 SE2d 438) (1996) (" 'The resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' ").

2. Baker next asserts that the evidence was insufficient as to the charges of rape, kidnapping and possession of a firearm involving N. H. because the State failed to show that those crimes were committed in Fulton County.[2]

As an appellate court, we view the evidence in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted.

(Citations omitted.) *Chapman v. State*, 275 Ga. 314, 317 (4) (565

---

[2] Baker also asserted that the State failed to establish venue as to the charge of kidnapping involving R. B., but as we find in Division 5 (b), infra, that Baker's conviction on that charge must be reversed, we need not address that argument here.

SE2d 442) (2002). Generally, criminal actions must be tried in the county where the crime was committed. OCGA § 17-2-2 (a). Moreover, "[l]ike every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt." (Punctuation and footnote omitted.) *Jones v. State*, 272 Ga. 900, 901-902 (2) (537 SE2d 80) (2000).

> Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. Like every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt. Proof of venue is a part of the State's case, and the State's failure to prove venue beyond a reasonable doubt renders the verdict contrary to law, without a sufficient evidentiary basis, and warrants reversal.

(Punctuation and footnotes omitted.) Id.

N. H. testified that she was on a pay phone on Camilla Street when Baker abducted her, but the State did not show that Camilla Street was in Fulton County. She said she was taken one block away and raped behind a school. N. H. testified at trial that when she got away from Baker, she stopped to get his tag number and immediately called police. One of the officers from the Atlanta Police Department who responded to that call testified that he met N. H. and other officers at a school on Fair Street in Fulton County. But N. H. said she took police to the wrong school before she was taken to the hospital. Although she said that she told the officers it was the wrong school, she did not tell them what the correct school was because they had already taken her to the hospital. Thus there was no evidence identifying the county in which N. H. was abducted, or the county in which she was raped, and thus no evidence that these crimes occurred in Fulton County. Because the State failed to prove beyond a reasonable doubt that venue for these offenses was properly laid in Fulton County, we must reverse Baker's conviction on the charges involving N. H. (Counts 16, 17, and 18). See *Bell v. State*, 291 Ga. App. 169, 171 (2) (661 SE2d 207) (2008).

3. Baker contends that the trial court erred in charging the jury:

> [s]hould you find that any witness has made any other statement on the witness stand consistent with another witness's testimony from the witness stand, and that such prior consistent statement is material to the case and the witness's testimony, then you are authorized to consider that other statement as substantive evidence.

This Court has previously described this charge as "unintelligible and therefore harmless." *Holden v. State*, 287 Ga. App. 472, 477 (4) (b) (651 SE2d 552) (2007). Considering the jury charge as a whole in this case, we agree that the giving of this charge was harmless. Id.; *Boyt v. State*, 286 Ga. App. 460, 464-468 (3) (649 SE2d 589) (2007).

4. Baker also argues that the trial court erred in sentencing him to life imprisonment on the numerous charges where it was the maximum sentence, contending instead that such a punishment should have been left to the jury. We are unpersuaded by this argument, and hold that this enumeration is without merit.

5. Baker further asserts that he received ineffective assistance of counsel at trial. To prevail on his claim of ineffective assistance of counsel, Baker must show that counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Terry v. State*, 284 Ga. 119 (663 SE2d 704) (2008), citing *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). If Baker fails to meet his burden of proving either prong of the *Strickland* test, this Court does not have to examine the other prong. *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

(a) Baker first asserts that his counsel was ineffective in failing to file a speedy trial demand, as he requested. He stated that the failure to do so allowed the State to collect evidence and witnesses against him and to better prepare its case.

Baker was originally indicted in this case on February 13, 2003 on six counts in connection with K. M. The indictment was later placed on the dead docket at the request of the State and Baker was reindicted on July 8, 2003. The second indictment included twenty-seven counts involving seven different victims. Baker's trial counsel testified that he asked her to file a speedy trial demand after this second indictment. The attorney stated that in her experience once a speedy trial demand is filed, the defendant should be ready to try the case as it could be placed on a trial calendar within days. She stated that she did not feel that she would be ready to address the charges against Baker in such a short time, and that she needed more time to prepare. The second indictment was also placed on the dead docket, and Baker was indicted for a third time on 23 counts on February 11, 2004. Baker was eventually tried in August 2004, some 13 months after he asked his counsel to file the speedy trial demand.

At the time he made his request, Baker had just been indicted on twenty-one new charges stemming from incidents involving six additional victims. His counsel thus had a choice of rushing to trial unprepared or taking time to investigate the additional charges against him. "As it is a reasonable strategy for counsel to be

prepared for trial, we agree with the trial court that appellant has not shown deficient performance on the part of trial counsel [in failing to file a speedy trial demand]." *Williams v. State*, 282 Ga. 561, 565 (5) (c) (651 SE2d 674) (2007). "Decisions based on counsel's reasonable trial strategy do not constitute deficient performance, and this Court does not evaluate trial counsel's tactics and strategic decisions in hindsight." (Citation and punctuation omitted.) *Upton v. Parks*, 284 Ga. 254, 257 (2) (664 SE2d 196) (2008).

(b) Baker argues that his counsel was ineffective for failing to file a plea in bar to the charges of kidnapping and robbery by force involving A. T., kidnapping involving R. B. and kidnapping and robbery by force involving P. J. He asserts that these charges were invalid because they were indicted outside the statute of limitation and no exception to the limitation was alleged in the indictment. See *McKeehan v. State*, 274 Ga. App. 14, 16 (2) (616 SE2d 489) (2005); *Moss v. State*, 220 Ga. App. 150 (469 SE2d 325) (1996). The State concedes that Baker's argument is correct and that the convictions on Counts 9, 11, 14 and 15 are therefore invalid. Thus, we reverse the convictions on these counts.

(c) Baker also contends that his trial counsel was deficient in failing to move to strike the jury panel after one juror passed around a note questioning the efficiency of the judicial process and expressing her opinion that it "is ready for careful and critical examination that would yield a more effective use of resources of both people's time and the state's money." The juror stated that she told about ten people that she was going to hand out this note to the jurors selected to see if they had any idea on how the system could be improved. But she said that she had no discussion about the facts of Baker's case. Two other jurors signed the note along with its author. In addition, Baker contends that the panel was further tainted by the remarks of several prospective jurors during voir dire indicating that they knew about his criminal record from newspaper accounts or they thought Baker was guilty due to various factors.

Baker's trial counsel stated that she did not consider moving the court to strike the panel as a result of the note because she felt that they had questioned the jurors who had signed the note and talked to all the jurors about the incident. The record shows that the juror authoring this note was excused from the panel, and the remaining jurors were questioned about the note and as to whether any discussions occurred regarding the facts of the case. None of the jurors indicated that any such conversations had occurred, and no one indicated that the note would affect his or her ability to decide the case.

Counsel's decision was a matter of trial strategy, and we find that Baker has failed to demonstrate that his counsel's performance

was deficient in this regard. See *Vega v. State*, 285 Ga. App. 405, 407 (2) (a) (646 SE2d 501) (2007) (trial counsel's decisions about jury strikes are tactical). Moreover, as the note addressed the judicial process as a whole and not Baker's case in particular, we find that he cannot establish prejudice.

Further while several jurors indicated that they had pre-formed opinions, the record indicates that these statements came during individual voir dire, not before the panel as a whole. However, Baker does not contend on appeal that the trial court erred in failing to excuse any of these jurors for cause. We find that Baker has failed to establish that his counsel was deficient in failing to move to strike the panel as a result of these responses to individual voir dire, nor has he demonstrated prejudice.

(d) Baker contends that his trial counsel was ineffective by affirmatively stating that the defense had no objection to the admission of evidence that he sought to exclude in his motion to suppress. As we have found no error in the trial court's denial of the motion to suppress, we find that Baker cannot establish prejudice on this ground.

(e) Baker argues that his trial counsel should have called a witness who presented favorable testimony in an earlier trial. Baker's trial attorney testified that she thought about calling the witness and discussed the matter with others in her office and with Baker. She stated that Baker and she agreed that it would be better not to call the witness so that they could retain the final closing argument before the jury.

"In the realm of specific decisions regarding trial strategy, and in particular decisions about which witnesses should be called to testify, defense attorneys are afforded wide discretion." (Footnote omitted.) *Simpson v. State*, 277 Ga. 356, 359 (4) (c) (589 SE2d 90) (2003). "The fact that [Baker] and his . . . present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that [Baker] received representation amounting to ineffective assistance of counsel." (Citation and punctuation omitted.) *Muller v. State*, 284 Ga. 70, 73-74 (3) (663 SE2d 206) (2008).

6. Baker also asserts that the trial court erred in not allowing him to question the former district attorney at the hearing on his motion for new trial. The trial court allowed Baker to question the prosecutor as to the contents of the juror's note discussed in Division 5 (c), supra. But Baker also sought to examine her about the extensive media coverage of Baker's trial, as well as other issues of alleged prosecutorial misconduct. The trial court denied the motion stating that these matters, including the issue of pre-trial publicity,

had been addressed at trial on the record and that Baker was not entitled to call the prosecutor to expand on that issue.

" 'It is well settled that the admission of evidence is a matter which rests largely within the sound discretion of the trial judge.' " (Footnote omitted.) *Bennett v. State*, 289 Ga. App. 110, 113 (2) (657 SE2d 6) (2008). We find no abuse of discretion here. While Baker hints at several instances of prosecutorial misconduct, he raises no issue in that regard on appeal, other than an attempt to "backdoor" the matter through this enumeration. Baker has failed to show that he was in any way prejudiced by the trial court's ruling. He has not shown, for example, that he could not otherwise have established his contentions with the trial records or by calling other witnesses at the hearing on the motion for new trial.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 24, 2008 —
RECONSIDERATION DENIED DECEMBER 11, 2008 — 

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney*, for appellee.