**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 14, 2015**

# In the Court of Appeals of Georgia

A15A1347. THE STATE v. YOUNG.

BRANCH, Judge.

On the evening of New Year's Day, 2012, William Young drove a large sport utility vehicle into a crowded pedestrian crosswalk just outside the Georgia Dome, hitting and injuring a boy. Young was arrested and charged with crimes including less-safe driving under the influence (DUI) and serious injury by vehicle. After Young moved to suppress any statements made by him, the trial court dismissed the DUI and serious injury charges on the ground that police did not have probable cause to arrest him. On appeal from this ruling, the State argues that such probable cause did exist. We agree and reverse.

"When the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts." *Hughes*

*v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015), citing *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). Our Supreme Court has identified "three corollaries" of this principle of deference, "which limit the scope of review in appeals from the grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts":

> First, an appellate court generally must accept those findings unless they are clearly erroneous. Second, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.

*Hughes*, 296 Ga. at 746 (1) (citations, punctuation and footnote omitted). We therefore focus on "the facts found by the trial court in its order, as the trial court sits as the trier of fact" in such cases. Id. (citation, punctuation and emphasis omitted).

The parties do not dispute that at 8 p.m. on the evening of January 1, 2012, immediately after the conclusion of an Atlanta Falcons football game, two off-duty police officers, Mathieu Cadeau and Richard Houston, were directing pedestrians and traffic at the corner of Ivan Allen Boulevard and Northside Drive in Atlanta. When the officers stopped traffic and signaled pedestrians to cross Ivan Allen Boulevard,

2

a group of approximately 50 people, including the victim, who was slightly ahead of his father, began to cross the street by means of the pedestrian crosswalk. When the victim had crossed approximately half of the street, a large red SUV emerged from the stopped traffic. Although Officer Cadeau attempted to get the SUV to stop by waving his hands over his head at the vehicle, it drove into the crosswalk, narrowly missing one of the officers, striking the father's hand, knocking his phone onto the street, and striking the child, who flew into the air and landed on the pavement, sustaining serious injuries. While a paramedic and a nurse at the scene attended to the victim, and as an ambulance was called, Officers Cadeau and Houston flagged down Officer Gabriel McElroy of the Atlanta Police Department. Because the two traffic officers were not on police duty, McElroy was required to assist them and to complete an accident report. Although the traffic officers saw the SUV hit the boy, they testified that they did not speak to Young before his arrest.

McElroy testified on direct examination that as he walked up to Young, who was standing by the side of his SUV, he noticed a "slight smell of alcohol." When McElroy asked whether Young had been drinking, Young responded, "Yes." McElroy also testified on direct that he talked to Officer Cadeau, learning that Young had struck the child in the crosswalk; that he detained Young in the back of his patrol

3

car, where he asked Young whether he would submit to field sobriety tests, which Young refused; and that he then read Young his Miranda warning and the Georgia implied consent notice. According to McElroy, Young did not respond to either of these readings. At some point within approximately five minutes after his initial approach to Young, McElroy placed Young under arrest. On cross-examination, McElroy testified that before placing Young in the patrol car, he also asked Young when and how much he had been drinking. Young's counsel pointed out that this information was missing from McElroy's written report.

Young was charged with less-safe DUI, serious injury by vehicle, failure to obey a police officer, and failure to yield to a pedestrian in a crosswalk.[1] Young moved to suppress any statements he may have made to police, including any refusal to submit to field sobriety or state-administered tests, on grounds including that he was stopped, detained and arrested without probable cause and that there was insufficient evidence to authorize a prosecution for less-safe DUI as well as the remaining charges. After a hearing on the motion, at which the father and all three police officers testified, the trial court suppressed all "evidence relating to" the DUI and serious-injury-by-vehicle charges. The trial court then dismissed these two

[1] See OCGA §§ 40-6-391 (a) (1), 40-6-394, 40-6-2, and 40-6-91 (a).

4

charges on the ground that police had lacked probable cause to arrest Young for DUI. The trial court also ordered the State to submit a new accusation for the two remaining misdemeanor charges "before the matter proceeds forward to a trial."

In a single assertion of error, the State argues that the trial court erred when it concluded that police had lacked probable cause to arrest Young for DUI. We agree.

As we begin our analysis, we are mindful of our Supreme Court's instruction that a trial court "'is not obliged to believe a witness even if [that witness's] testimony is uncontradicted and may accept or reject any portion of the testimony.'" *Hughes*, 296 Ga. at 747 (1), quoting *Tate*, 264 Ga. at 56 (3). Further, "where, as here, the trial court has made extensive findings of fact, we generally must presume that the absence of a finding of fact that would tend to undermine the conclusion of the trial court reflects a considered choice to reject the evidence offered to prove that fact[.]" *Hughes*, 296 Ga. at 747 (1).

This trial court made a variety of findings of facts, some of them contradictory, in the course of its legal analysis, a practice that makes our task of appellate review substantially more difficult. Reading the order dismissing the DUI and serious-injury-by-vehicle charges in favor of the trial court's judgment, however, as we are obliged to do, we understand the trial court as having made the following findings of fact:

5

– Young failed to obey the officers's hand signals to stop, but may have done so because those signals were "confusing," as in Officer Cadeau's in-court demonstration;

– Officers Cadeau and Houston "admit[ted]" that they did not talk to Young before his arrest, but their testimony that they had "no contact" with him was not credible;

– Officers Cadeau and Houston "did not interact" with Young such that "they could provide no information whatsoever concerning the presence of alcohol" in Young's system;

– Officer McElroy's investigation and documentation of the incident were inadequate and "cursory," and his failure either to specify in his report or to testify on direct examination that he had asked Young at the scene how much or when he drank "cast[] serious doubt" on his later testimony on cross-examination that he had asked Young how much and when he drank;

– Officer McElroy's testimony as to Young's appearance and demeanor, as well as his interaction with Young, "lack[ed] credibility."

On the basis of these factual findings, the trial court concluded that the combined circumstances of Young's driving into the crosswalk where the victim was hit, Young's "slight smell of alcohol," and his admission of drinking "without any specificity of the amount or time of consumption," did not provide probable cause to arrest him for less-safe DUI.

As we have noted, the trial court specifically held that McElroy's direct-examination account of his interaction with Young was not credible, and the court also excluded any mention of Young's refusal to submit to field sobriety or state-administered tests from the evidence it considered on the question whether police had probable cause to arrest Young for DUI. Because the trial court disavowed or ignored the entirety of McElroy's testimony for purposes of the motion to suppress, we must also ignore his testimony that Young refused to submit to any testing. See *Hughes*, 296 Ga. at 747 (1) (Court of Appeals erred in failing to apply a presumption that the absence of a finding of fact in a trial court's order containing such findings "reflects [the court's] considered choice to reject the evidence offered to prove that fact"). Nonetheless, the trial court *did* believe two critical facts attested to by McElroy: first, that McElroy actually smelled alcohol on Young when first encountering him, and second, that Young told McElroy that he had been drinking. We are thus presented with a legal rather than a factual question: that is, whether these two pieces of credited evidence, along with the undisputed evidence that Young drove his SUV into a crosswalk, hitting the victim, would have given a reasonable officer probable cause to arrest Young for less-safe DUI.

McElroy would have had probable cause to arrest Young for less-safe DUI if the facts and circumstances within his knowledge were "'sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown,'" that Young had committed that crime. *Hughes*, 296 Ga. at 748 (2), quoting *Michigan v. DeFillippo*, 443 U.S. 31 (99 SCt 2627, 61 LEd2d 343) (1979).

> [W]hen a court considers whether an officer had probable cause to arrest a suspect, the court must focus on the facts and circumstances then known to the officer, and it must inquire whether those facts and circumstances *could* lead a prudent person – that is, a reasonable officer – to conclude that the suspect probably has committed an offense. The facts and circumstances known to the officer must be examined altogether, for it is the totality of those facts and circumstances that matters, [and] not any one fact or circumstance standing alone. . . . Because the standard for probable cause depends on what a reasonable officer could have concluded from those facts and circumstances, the standard of probable cause is an objective one, and the subjective thinking of the actual officers in a particular case is not important.

*Hughes*, 296 Ga. at 748-749 (2) (citations and footnote omitted; emphasis in original).

A conviction for less-safe DUI

> does not require proof that a person actually committed an unsafe act while driving; it only requires sufficient evidence to authorize a finding, beyond a reasonable doubt, that the defendant was operating or in

8

physical control of a moving vehicle while under the influence of alcohol to the extent that it was less safe for him to drive. Circumstantial evidence may be sufficient to meet this burden of proof.

*Massa v. State*, 287 Ga. App. 494, 495 (1) (651 SE2d 806) (2007) (punctuation and footnote omitted).

> "Methods of proof to show [DUI] impairment *may* include evidence of (i) erratic driving behavior, (ii) refusal to take field sobriety tests and the breath or blood test, and (iii) the officer's own observations (such as smelling alcohol and observing strange behavior) and resulting opinion that the alcohol made it less safe for the defendant to drive."

*Jones v. State*, 273 Ga. App. 192, 193 (1) (614 SE2d 820) (2005) (emphasis supplied), quoting *Drogan v. State*, 272 Ga. App. 645, 647 (1) (b) (613 SE2d 195) (2005). We also note that "[t]he facts necessary to establish probable cause for arrest are *much less* than those required to prove guilt beyond a reasonable doubt at trial; the test merely requires a probability – less than a certainty but more than a mere suspicion or possibility." *Baker v. State*, 295 Ga. App. 162, 164 (1) (a) (671 SE2d 206) (2008) (citation and punctuation omitted; emphasis supplied).

Applying this law to the material facts as found by the trial court, we conclude that McElroy had probable cause to arrest Young for less-safe DUI. It is undisputed that Young drove his SUV into a crosswalk, hitting the victim, and the trial court

9

credited McElroy's testimony that Young smelled of alcohol and admitted to drinking. Even if any one of these or other facts, standing alone, might be susceptible to an "innocent explanation" – as when the trial court explained away Young's erratic driving by characterizing Officer Cadeau's hand signal as "confusing" – "we do not consider any fact or circumstance standing alone." *Hughes*, 296 Ga. at 751 (2) (noting the error of a trial court's "divide and conquer" approach to a set of facts establishing probable cause to arrest for DUI). Rather, the totality of the circumstances here would have authorized a reasonable officer to conclude that Young was driving under the influence. Id. at 752 (2) (defendant who ran a red light, had "glassy eyes" and "may have been unsteady on his feet," and had some "tightly packaged pills" on his person provided officers with probable cause to arrest him for DUI); see also *Oliver v. State*, 268 Ga. App. 290, 295 (2) (601 SE2d 774) (2004) (police had probable cause to arrest defendant for DUI when he was found standing over a wrecked motorcycle and smelling strongly of alcohol). We therefore reverse the trial court's dismissal of the DUI and serious-injury-by-vehicle charges as well as its suppression of Young's refusal to submit to testing and remand for further proceedings in which the credibility of witnesses, including Officer McElroy, will be for the jury to consider.

*Judgment reversed. Andrews, P. J., and Miller, J., concur.*

10