## A99A2517. YARBROUGH v. THE STATE.
(527 SE2d 628)

PHIPPS, Judge.

Joey Yarbrough was convicted of violation of duty upon striking a fixture, driving under the influence of alcohol to the extent it was less safe to drive, and driving while having an alcohol concentration of 0.10 grams or more. He appeals, challenging the admission of his blood alcohol test results and a statement he made to the arresting officer, the trial court's denial of his motion for mistrial and restriction of his cross-examination of the arresting officer, and the sufficiency of the evidence to support denial of his motion for directed verdict and the jury's verdict. We find no merit in any assertion of error and affirm Yarbrough's conviction.

In the early morning hours of July 9, 1995, a pickup truck traveling south on State Highway 11 between Athens and Social Circle apparently failed to negotiate a curve, went off the right side of the road, hit a guardrail, careened back across the road, traveled 450 feet down an embankment, and crashed into a wooden four-by-four fence. At 5:50 a.m., Yarbrough was treated at Newton General Hospital. He had lacerations, abrasions, and bruises. He told the attending nurse, Patty Boswell, that he had been injured in an accident involving his truck and that he was riding in the passenger seat when the accident occurred.

Pursuant to hospital policy, Boswell called the police to report the accident. Officer Brent Langley of the Newton County Sheriff's Department was dispatched to the hospital. Yarbrough told him that he had been riding in the back of his truck, a friend was driving, and

---

[13] *Johnson*, supra, 214 Ga. App. at 79 (1); see also *Teat v. State*, 237 Ga. App. 867, 869 (2) (a) (516 SE2d 794) (1999).

the truck wrecked somewhere near Social Circle. Langley noticed that Yarbrough's speech was slurred and that he smelled strongly of alcohol.

Langley got the keys to the truck from Yarbrough and went to investigate the accident. The truck had come to rest in a ditch where it had pushed the fence. The truck had extensive damage, and a fence post had penetrated the windshield and the passenger side of the interior. No one was found in or near the truck.

After investigating the accident, Langley went back to the hospital and read Yarbrough implied consent warnings. Yarbrough consented to a blood test, and his alcohol concentration level was later determined to be 0.21 grams.

1. Prior to trial, Yarbrough moved in limine to condition admissibility of the blood test results on a showing by the State that Langley had accurately read the implied consent warning to him. Langley was asked to read the warning he read to Yarbrough at the hospital. While reading, he stated, "If you submit to the testing and the results indicate an alcohol concentration of .010 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year." Langley read the warning incorrectly. The legal blood alcohol concentration limit is 0.10.[1] Concerned more with what Langley read to Yarbrough at the hospital than with what he read at the pretrial hearing, the court denied Yarbrough's motion in limine. Later at trial Langley read the implied consent warning correctly.

In *Maurer v. State*,[2] a similar situation occurred. An officer who was reading the implied consent warning at trial stated 0.01 instead of 0.10 but later corrected himself. He explained that his initial mistake was due to a slip of the tongue. We held that even if the officer had misstated the legal alcohol limit when he read the warning to the defendant, the mistake was harmless and did not render the test results inadmissible. We reasoned:

> [T]he amended version of OCGA § 40-5-67.1 (b) states that the implied consent notice " 'need not be read exactly so long as the substance of the notice remains unchanged.' (Cit.)" [Cit.] . . . An understatement of the legal limit would naturally induce the person to whom the warning was given to withdraw his consent to testing whereas he otherwise might not. Conversely, the person might be led to submit to testing if the legal limit were overstated. Because [the defendant] did not withdraw his consent, any understatement of the

---

[1] OCGA § 40-5-67.1 (b) (2).
[2] 240 Ga. App. 145, 146-147 (2) (525 SE2d 104) (1999).

legal limit did not change the substance of the notice in any way harmful to him. [Cits.][3]

The same reasoning applies to Yarbrough's assertion of error. The court did not err in denying Yarbrough's motion in limine and admitting the results of his blood test.

2. Yarbrough asserts that the court erred in admitting his statement to Langley that he was riding in the back of the truck and a friend was driving when the accident occurred. Before trial, Yarbrough moved in limine to exclude the statement on the ground that Langley had not read him *Miranda* rights before he made the statement.

Langley testified at the pretrial hearing that he questioned Yarbrough twice — when he initially met Yarbrough at the hospital and when he returned to the hospital after investigating the accident scene. The trial court determined that *Miranda* was applicable to Langley's second encounter with Yarbrough but not his first, because Yarbrough was not under arrest until the second conversation. Langley initially testified at the pretrial hearing that the statement was made during the second conversation. After a recess, he changed his testimony and said the statement was made during the first conversation.

Yarbrough disputes the trial court's finding that the statement was made during the first conversation. He asserts Langley lacked sufficient credibility for the court to accept the change in his testimony regarding the timing of the statement. Yarbrough emphasizes that the court refused to admit another statement Langley attributed to Yarbrough because the court found it incredible. In this regard, Langley testified at the hearing that Yarbrough also told him during the first conversation that Yarbrough had wrecked his truck. Langley had not noted the statement in his police report, however, and neither the defense nor the prosecution had heard of the statement before the pretrial hearing.

"In cases involving the review of the grant or denial of . . . motions in limine, we must construe the evidence most favorably to uphold the findings and judgment of the trial court, and that court's finding as to disputed facts and credibility must be adopted unless clearly erroneous. (Cits.)" [Cit.][4]

---

[3] Id. The subject amendment to OCGA § 40-5-67.1 (b) became effective March 27, 1998. But, because it is procedural in nature, it applies retroactively. *State v. McGraw*, 237 Ga. App. 345, 346 (1) (514 SE2d 34) (1999).

[4] *State v. Terry*, 236 Ga. App. 248, 249 (511 SE2d 608) (1999).

The court's finding regarding the timing of Yarbrough's statement turned on a credibility determination. Despite the court's finding that Langley's testimony was incredible in one respect, we cannot find the court was required to reject the remainder of his testimony. The court's determination in favor of admissibility was not clearly erroneous.

3. Although the court ruled before trial that Langley could not testify that Yarbrough had told him he was driving the truck when it wrecked, Langley did so.

> PROSECUTOR: At what point did you return to the accident — or actually go to the accident scene?
> LANGLEY: Well, in speaking with the defendant I learned his vehicle was a Ford Ranger pickup truck and, like I said, he told me he wrecked it somewhere near Social Circle, it was wrecked somewhere near Social Circle —.

Defense counsel immediately moved for mistrial.

Following a conference outside the presence of the jury, the judge gave the jury a curative instruction stating Langley misspoke when he said Yarbrough told him he had been driving and that, in fact, Yarbrough had not said that. The judge added that the testimony was expected to show that Yarbrough said someone else was driving. The judge then asked the jurors whether they could disabuse themselves of the statement. Each indicated he could.

Testimony then proceeded without a renewal of the motion for mistrial. Therefore, the denial of the motion was not preserved for appellate review.[5]

4. Yarbrough moved for directed verdict on the grounds that the evidence did not warrant findings that he was the driver or that he was a less safe driver. On appeal, Yarbrough challenges the denial of his motion and the sufficiency of the evidence for conviction. Yarbrough's insufficiency claim presents the same grounds as his motion for directed verdict but also asserts that his conviction for per se DUI must be reversed because no evidence was presented that he was driving within three hours of the time his blood was drawn for testing.

> "The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any

---

[5] *Anderson v. State*, 236 Ga. App. 679, 685 (7) (513 SE2d 235) (1999).

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Cit.] . . . [M]oreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) ((1979)). Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve.[6]

(a) Yarbrough asserts that the hypothesis that he was a passenger in the truck remained a reasonable one at the conclusion of the evidence and, therefore, the evidence was insufficient to support a conviction based on circumstantial evidence. Yarbrough emphasizes testimony from Nurse Boswell and a paramedic, Benny Atkins, that abrasions on Yarbrough's body were more likely sustained through ejection from the truck rather than presence in the passenger compartment of the truck.

Questions of reasonableness are generally left to the jury unless the jury's verdict is unsupportable as a matter of law.[7] Despite the testimony noted by Yarbrough, the reasonableness of the hypothesis that he was a passenger depended on weighing the evidence and resolving credibility issues, which were matters for the jury. The testimony emphasized by Yarbrough was contradicted by testimony from Langley that the injuries were most likely sustained by impact with the steering wheel and other parts of the interior of the truck. Further, Yarbrough's own witness Atkins conceded that the nature of the injuries did not rule out that Yarbrough was the driver. Finally, Yarbrough gave inconsistent statements regarding where he had been positioned in the truck; the only information he could provide about the person he claimed to be the driver was that his name was Alan; no one else was found at or near the accident scene; and Yarbrough had the keys to the truck. The evidence was sufficient to establish Yarbrough was the driver.

(b) Yarbrough argues that even if he were determined to be the driver, the only evidence of less safe driving ability was the accident. This argument is without merit. The evidence showed the following additional circumstances: (1) Yarbrough's alcohol concentration level was more than twice the legal limit; (2) he testified that he had drunk very heavily that night and was too intoxicated to drive safely, which was why Alan was driving him; and (3) when Langley encountered him, he smelled heavily of alcohol and had slurred speech.

[6] *Jackson v. State*, 236 Ga. App. 260-261 (511 SE2d 615) (1999).
[7] *Lewis v. State*, 149 Ga. App. 181, 182 (1) (254 SE2d 142) (1979).

There was sufficient evidence to find Yarbrough was a less safe driver.

(c) OCGA § 40-6-391 (a) (5) declares a person per se DUI if: "The person's alcohol concentration is 0.10 grams or more at any time within three hours after . . . driving or being in actual physical control [of a moving vehicle] from alcohol consumed before such driving or being in actual physical control ended." Contrary to Yarbrough's assertion, the statute does not require that the person be tested within three hours. It need be established only that his alcohol concentration was 0.10 grams or greater during the three-hour period after he ceased driving or exercising actual physical control of the vehicle.

Yarbrough's alcohol concentration, determined from blood drawn at the hospital, was 0.21 grams. His testimony that a passing car took him directly from the accident scene to the hospital indicates that he did not consume additional alcohol after the wreck and that his alcohol concentration was 0.21 or greater when the accident occurred. There was sufficient evidence that his alcohol concentration exceeded the legal limit within the requisite time period.

5. During cross-examination, defense counsel asked Langley how Yarbrough's possession of the keys to the truck proved Yarbrough had been driving the truck. The court sustained an objection by the State that the question was one for the jury. Yarbrough asserts that the trial court improperly restricted his cross-examination.

> [T]he scope of . . . cross-examination is within the sound discretion of the trial court who may curtail inquiries which are not relevant or material. The trial court may curtail inquiries which are unduly repetitive or harassing and may exercise reasonable judgment in determining when a subject is exhausted. Such restrictions lie within the discretion of the trial court and will not be disturbed on appeal unless manifestly abused. [Cit.][8]

The court did not abuse its discretion in sustaining the State's objection. The question posed was for the jury to decide after considering all of the evidence.

*Judgment affirmed. Johnson, C. J., and McMurray, P. J., concur.*

DECIDED JANUARY 11, 2000.

*Moulton & Massey, Terry N. Massey*, for appellant.

---

[8] *Daniels v. State*, 235 Ga. App. 296, 297 (1) (509 SE2d 368) (1998).

*Alan A. Cook, District Attorney, Jennifer E. Greene, Assistant District Attorney*, for appellee.