## A00A2208. JONES v. THE STATE.
### (542 SE2d 584)

BLACKBURN, Presiding Judge.

Billy Frank Jones appeals the sentence rendered by the trial court after he entered a nonnegotiated plea of guilty to a misuse of a firearm while hunting charge. Jones contends that his sentence of two years to serve and eight years probation is cruel and unusual punishment and that the trial court erred in requiring restitution despite his financial inability. For the reasons set forth below, Jones' sentence is affirmed in part and reversed in part.

Jones was indicted on charges of felony murder, misuse of a firearm while hunting, and hunting on the land of another without permission. Jones pled guilty to the charge of misusing a firearm while hunting, and a nolle prosequi order was issued on the other charges. The indictment set forth that Jones:

> did use a firearm in a manner constituting a gross deviation from the standard of care which a reasonable person would exercise in the situation, to wit: defendant Billy Frank Jones did shoot his firearm at Scott Dewayne Wilson, a human being who was wearing a fluorescent orange vest required by law and who did not give a reasonable person the impression of being wildlife, and said defendant Billy Frank Jones did shoot Scott Dewayne Wilson without taking reasonable care to ascertain what said defendant was shooting and did thereby cause serious bodily harm to wit: a gunshot wound to the chest of Scott Dewayne Wilson by shooting while consciously disregarding a substantial and unjustifiable risk that the said act would cause harm to or endanger the safety of another person, in violation of OCGA § 16-11-108 (a).

Wilson died of the gunshot wound inflicted by Jones.

The State's proffer at the plea hearing indicated that Jones was in a tree stand approximately 78 yards from Wilson when Jones thought he saw movement, looked through his scope, and fired. Wilson's friend, Steve, heard someone calling for help and came looking for Wilson. Steve noticed Jones and said, "I heard my friend call for help. I heard the gunshot. Have you seen anybody?" Jones replied that he had not heard or seen anybody. Steve then ran back into the woods to find the other person with whom he was hunting in order to

continue the search for Wilson. After Steve left, Jones went to find out what he had shot. When he discovered that he had shot a person, he left the scene to go find his son, who was also hunting that day. Jones and his son went to the police department to report the shooting.

Jones testified that he "fired at the movement. . . . [W]here I shot was covered up with vines like a tunnel. And I really just guessed at it. . . . I thought it was a coyote." Corporal Hall with the Department of Natural Resources testified that the shooting was the result of gross negligence.

1. Jones contends that the trial court's sentence which required that he serve two years, of his ten-year sentence, in prison constituted cruel and unusual punishment. Jones argues that his sentence is cruel and unusual because he is a 68-year-old man who is disabled with a heart condition. His doctor testified that incarceration would shorten Jones' life to a number of weeks.

Initially, we note that where the sentence is within the statutory limits, "[l]egislative discretion must be deferred to unless, under the circumstances, the sentence shocks the conscience." (Punctuation omitted.) *McCrosky v. State*.[1] See also *Lambeth v. State*.[2] In the present case, the sentence is within the statutory guidelines. OCGA § 16-11-108 (a) pertinently provides that if serious bodily harm to another person results from the misuse of a firearm while hunting, a felony has been committed and a person convicted thereof shall be punished by "imprisonment for not less than one nor more than ten years." Because Jones' sentence is within the statutory limits, we must determine if this sentence shocks the conscience.

Here, Jones recklessly murdered Wilson, violating both the safety etiquette required of hunters and, more importantly, the fundamental norms of a civilized society. There is no crime more egregious than the senseless homicide of a human being, and we decline to accept Jones' argument that a sentence of two years to serve is too great a cost for such a severe transgression. Jones' sentence does not shock the conscience. It is well under the statutory maximum sentence allowed and is not grossly out of proportion to the severity of the crime. See *McCrosky*, supra. Jones' grossly negligent acts caused the death of another human being. Incarceration for two years as a result of criminally negligent acts causing the death of another is not out of proportion. The medical testimony concerning Jones' health addressed itself to the sound discretion of the trial court. We cannot say that the trial court abused its discretion in sentencing Jones to

---

[1] *McCrosky v. State*, 234 Ga. App. 321, 323 (3) (506 SE2d 400) (1998).

[2] *Lambeth v. State*, 257 Ga. 15 (354 SE2d 144) (1987).

incarceration notwithstanding Jones' medical condition.

2. Jones contends that the trial court failed to consider the guidelines set out in OCGA § 17-14-10 when ordering restitution. The trial court ordered Jones to pay $384,890.31 in restitution. Jones is required to pay $300 per month during the term of his probation. The trial court also provided that any sums remaining at the end of Jones' probation would be subject to a lien, permitting recovery from any assets coming into Jones' possession in the future.

(a) OCGA § 17-14-10 requires that in determining the nature and the amount of restitution the trial court shall consider:

(1) The present financial condition of the offender and his dependents; (2) The probable future earning capacity of the offender and his dependents; (3) The amount of damages; (4) The goal of restitution to the victim and the goal of rehabilitation of the offender; (5) Any restitution previously made; (6) The period of time during which the restitution order will be in effect; and (7) Other appropriate factors which the ordering authority deems to be appropriate.

In the present case, two hearings were held. The initial hearing primarily dealt with the trial court's acceptance of Jones' guilty plea. However, at the end of the hearing, with little more than a cursory mention during the attorneys' arguments regarding restitution, the trial court ordered restitution in the amount of $384,789.80. The record is clear that in ordering restitution, at that point, the trial court had failed to make the necessary findings as required by OCGA § 17-14-10. Thereafter, Jones' counsel filed a motion to modify the trial court's sentence due to the trial court's failure to afford Jones a restitution hearing. The hearing held thereafter addressed the appropriateness of Jones' sentence to serve two years and the amount of restitution.

At the hearing, the trial court made it clear that its position with regard to restitution had been decided and that the hearing was a mere formality. The trial court noted:

I think that I've already informally talked to both [defense counsel] and [the prosecutor] and told you that I was going to grant a restitution hearing in the case. Even though I felt like it had essentially been covered at the time of the sentencing hearing, that I'll still go ahead and allow you to present whatever you want to present in that respect.

Later during the same hearing the trial court noted: "Well, I'm not going to re-argue restitution. I'm going to let you present what you want to present in the way of additional restitution evidence at that

time." After the hearing, the trial court made specific findings regarding the factors outlined in OCGA § 17-14-10. With regard to Jones' monthly income and main expenses: Jones' Social Security benefits, $1,000; Jones' wife's Social Security benefits, $300; Jones' prescription drug expenses, $318.93; health insurance premiums for Jones' wife, $450; and utilities, $150. The trial court's order did not reflect any consideration of Jones' counsel's proffer regarding Jones' monthly expenses of $88 for Billy Jones' medical insurance, $158 for Jones' cancer insurance, and approximately $650 for food, clothes, and other necessities. The trial court made no findings and no evidence was presented regarding rent or mortgage payments, property taxes, or insurance. In its order, the trial court delineated the damages of: funeral bill, $7,534.76; monument expense, $1,043.25; and the present cash value of victim's anticipated future earnings, $376,212.30.

In ordering restitution in the amount of $300 per month, the trial court relied on the fact that defense counsel urged imposition of a home confinement program, in lieu of incarceration, which would cost Jones $10 per day. The trial court reasoned that Jones was therefore able to make that same payment as restitution. The trial court stated:

> [A]t the time of the sentencing hearing, it was stated in the record . . . that you urged that [Jones] go under a home confinement program that would have cost $10 a day for him to be in that program. And I find it appalling here today to say that he could pay $10 a day to stay out of jail but he can't pay $10 a day in restitution.

In fact, however, the record reflects that counsel had said that Jones' "family [would] help support him as far as paying for the house arrest." During the second hearing, Jones' counsel argued to the trial court, that Jones' family and friends would help support him in order to pay for the house arrest program because Jones could not afford it.

OCGA § 17-14-10 (7) allows the trial court to consider appropriate factors in awarding restitution. Voluntary payments by friends and family of the defendant, however, are not appropriate considerations because such payments can be terminated at any given time with or without cause. The trial court's focus on voluntary payments by family members was inappropriate. The record reflects that the trial court failed to take into consideration any state-imposed charges in connection with the restitution payments which it ordered. The trial court must consider any such charges in determining whether Jones is able to pay restitution and, if so, in what amount. Because the trial court did not consider the proper elements

as required by law, we remand this case for a new hearing on the issue of restitution consistent with this opinion.

> [T]hree things are required in order to impose restitution as a condition of probation: (1) a restitution hearing; (2) consideration of the factors outlined in OCGA § 17-14-10; and (3) findings of fact. . . . Under OCGA § 17-14-9, "the amount of restitution ordered may be equal to or less than, but not more than, the victim's damages," which are further defined in OCGA § 17-14-2 (2) as "all damages which a victim could recover against an offender in a civil action . . . based on the same act or acts for which the offender is sentenced."

*Anderson v. State.*[3]

We further note that any order requiring restitution would not bar a civil action against Jones to recover damages for Wilson's wrongful death. See OCGA § 17-14-11. In a civil action, Jones' ability to pay would not be relevant to the amount of damages awarded.

(b) The trial court also erred in allowing that any restitution sums not paid in full during the term of defendant's probation be subject to a lien. OCGA § 16-11-108 (a) allows for a maximum imprisonment of ten years. Jones was sentenced to ten years. A court may order restitution only as a condition of any relief, see OCGA § 17-14-3, such as probation. See *Morrison v. State.*[4] When Jones' probation is completed, the court does not have the authority to continue restitution payments or impose a lien. Therefore, the trial court's order establishing a lien after the term of Jones' probation was also error.

*Judgment affirmed in part and reversed in part and remanded with direction. Eldridge and Barnes, JJ., concur.*

DECIDED NOVEMBER 20, 2000.

*Peter J. Ross*, for appellant.

*James R. Osborne, District Attorney, Elizabeth L. Larson, Assistant District Attorney*, for appellee.

---

[3] *Anderson v. State*, 226 Ga. App. 286 (486 SE2d 410) (1997).
[4] *Morrison v. State*, 181 Ga. App. 440, 441 (352 SE2d 622) (1987).