**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 11, 2022**

# In the Court of Appeals of Georgia

A22A0146. BUTLER v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Christina Butler guilty of first-degree vehicular homicide, driving under the influence of alcohol per se ("DUI per se"), and driving under the influence of alcohol to the extent that it was less safe for her to drive ("DUI less safe"). Butler appeals from the denial of her motion for a new trial, raising ten claims of error. For the reasons that follow, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. *Krauss v. State*, 263 Ga. App. 488, 488 (1) (588 SE2d 239) (2003). So viewed, the evidence shows that, on the day in question, Butler attended a barbecue

at which she consumed beer.[1] After leaving the barbecue, while driving near the intersection of Covington Highway and Memorial Drive shortly after 11:00 p.m., she struck the victim as he walked across the road approximately 283 feet outside of the nearest crosswalk. Skid marks indicated that, after she engaged her brakes, she traveled across multiple lanes of the five- or six-lane road before hitting the victim. At the time, the weather was clear and the roads were dry. A detective who viewed the scene shortly after the accident testified that the area was well-lit by streetlights and area businesses and that a pedestrian at the location of the collision would have been "illuminated and detectable." He further testified that Butler's car was traveling at approximately 31-35 miles per hour (in a 45-mile-per-hour zone) before she braked and that "speed was not a contributing factor" to the accident.

A police officer who interviewed Butler at the scene detected a strong odor of alcohol on her breath and noticed that her eyes were "extremely bloodshot and glassy." During field sobriety testing, Butler demonstrated all six clues for impairment in the horizontal gaze nystagmus ("HGN") test, and a portable breath test detected the presence of alcohol.[2] The officer arrested Butler and took her to a

---

[1] Butler told a police officer that she had two beers at the barbecue.

[2] The officer did not conduct other field sobriety tests because Butler was limping due to a cut on her knee.

hospital, where blood was drawn. The victim died that night as a result of injuries sustained in the collision. Toxicology reports indicated that Butler had a blood-alcohol concentration ("BAC") of 0.084 (plus or minus 0.04) grams per milliliter; the victim's BAC was 0.373 (plus or minus 0.019) grams per milliliter, and he also had cocaine in his system.

The jury found Butler guilty of first-degree vehicular homicide, DUI per se, and DUI less safe. The trial court merged the two DUI convictions into the vehicular-homicide conviction and sentenced Butler to seven years in prison, to be followed by eight years on probation. This appeal followed.

1. Butler contends that the evidence was insufficient to support her convictions. We disagree.

"When a criminal defendant challenges the sufficiency of the evidence supporting [her] conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Galvan v. State*, 330 Ga. App. 589, 592 (1) (768 SE2d 773) (2015) (citation and punctuation omitted); see also *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "[I]t is the sole province of the trier of fact to resolve conflicts in

the testimony," and this Court neither weighs the evidence nor determines witness credibility. *Evans v. State*, 315 Ga. App. 863, 864 (729 SE2d 31) (2012). "[A]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the trier of fact's verdict will be upheld." Id. (citation and punctuation omitted).

(a) Butler first contends that the evidence was insufficient to show that her driving ability was impaired so as to support her DUI less safe conviction. We disagree.

As charged in Butler's indictment, the State was required to prove that she drove a motor vehicle while under the influence of alcohol to the extent that it was less safe for her to drive. See OCGA § 40-6-391 (a) (1); *Allen v. State*, 257 Ga. App. 246, 247 (1) (570 SE2d 683) (2002). As discussed above, the State presented evidence that Butler had a BAC level of 0.084 grams,[3] had a strong odor of alcohol on her breath and extremely bloodshot and glassy eyes, demonstrated all six clues for impairment in a field sobriety test, and struck a pedestrian walking across a road in dry, well-lit conditions. This evidence was sufficient for the jury to infer that Butler

---

[3] As discussed in Division 1 (b) below, driving with a BAC level of 0.08 grams or more is a violation of the DUI per se statute. See OCGA § 40-6-391 (a) (5).

4

drove her car while under the influence of alcohol to the extent that it was less safe for her to do so. See *Brent v. State*, 270 Ga. 160, 161 (1) (510 SE2d 14) (1998) (evidence that the defendant "had alcohol on his breath, registered positive on [a portable breath test], failed all six parts of the HGN test, had substandard performances on [other] tests, and, in the expert opinion of [a law enforcement officer], was less safe to drive," was sufficient to support his conviction for DUI less safe, even absent evidence that he committed an unsafe act while driving); see also generally *State v. Young*, 334 Ga. App. 161, 165 (778 SE2d 402) (2015) (circumstantial evidence may be sufficient for the State to establish that "the defendant was operating or in physical control of a moving vehicle while under the influence of alcohol to the extent that it was less safe for [her] to drive"); *Yarbrough v. State*, 241 Ga. App. 777, 781-782 (4) (b) (527 SE2d 628) (2000) (causing a traffic accident, along with other evidence of intoxication, may be sufficient to establish the offense of DUI less safe).

(b) Butler further maintains that the evidence was insufficient to support her DUI per se conviction because: (i) her blood was not tested within three hours of the accident; and (ii) there was no evidence as to when she last consumed alcohol. Again, we disagree.

Under the applicable statute, and as charged in her indictment, the State was required to prove that Butler drove while her BAC level was 0.08 grams or more "within three hours after such driving . . . from alcohol consumed before such driving . . . ended." OCGA § 40-6-391 (a) (5); see *Yarbrough*, 241 Ga. App. at 782 (4) (c). Importantly, "the statute does not require that the person be tested within three hours." *Yarbrough*, 241 Ga. App. at 782 (4) (c). Rather, the State need only show that the accused's BAC level was greater than the statutory limit "during the three-hour period after [s]he ceased driving." Id.

It is undisputed that Butler's blood was drawn no later than 2:15 a.m., between three hours and three hours and fifteen minutes after she hit the victim. A forensic toxicologist testified that, at that time, Butler's BAC was either at its highest concentration or had started to decline since she last consumed alcohol. And neither the first officer to respond (who spoke with Butler) nor the officer who arrested Butler gave any indication that she had any opportunity to consume alcohol at any point after the collision or that alcohol was found in her car or on her person.

The above evidence was sufficient for the jury to infer that Butler last consumed alcohol before the collision and that her BAC level was 0.084 or higher at the time of the collision. And even if the evidence on these points arguably may be

6

deemed entirely circumstantial, when viewed in its entirety, it was sufficient for the jury to reject any *reasonable* theory other than Butler's violation of the DUI per se statute. See *Mason v. State*, 199 Ga. App. 691, 692-693 (1) (405 SE2d 747) (1991) (although a conviction based on circumstantial evidence is authorized only if the evidence excludes every other *reasonable* hypothesis save the defendant's guilt, it need not exclude *every* inference or hypothesis, and whether this test has been satisfied is a question for the jury) (citing former OCGA § 24-4-6, now codified at OCGA § 24-14-6); accord *Hill v. State*, 297 Ga. 675, 678 (2) (b) (777 SE2d 460) (2015); see also generally *State v. Loy*, 251 Ga. App. 721, 722 (554 SE2d 800) (2001) ("[I]t is not necessary for a conviction of driving under the influence . . . that the driver actually be seen behind the wheel driving the car while under the influence. Such facts, as any others, may be shown by circumstantial evidence.") (citation and punctuation omitted).

(c) Butler also contends that the evidence was insufficient to establish the causation element of her vehicular-homicide conviction. Once again, we disagree.

To establish Butler's guilt of first-degree vehicular homicide as alleged in her indictment, the State was required to prove that, while driving a motor vehicle and without malice aforethought, Butler caused the victim's death through a violation of

7

OCGA § 40-6-391. See OCGA § 40-6-393 (a). As relevant here, OCGA § 40-6-391 defines the offenses of DUI less safe and DUI per se. See OCGA § 40-6-391 (a) (1), (a) (5). "In vehicular homicide cases, the State must prove that the defendant's conduct was the 'legal' or 'proximate' cause, as well as the cause in fact, of the death." *Miller v. State*, 236 Ga. App. 825, 828 (2) (513 SE2d 27) (1999). While the State must establish "a causal connection between the defendant's violation of the DUI statute and the victim's death," it need not show "that the defendant actually commit[ted] an unsafe act." *Corbett v. State*, 277 Ga. App. 715, 717 (1) (b) (627 SE2d 365) (2006).

> An injury or damage is proximately caused by an act or a failure to act whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably probable consequence of the act.

*McGrath v. State*, 277 Ga. App. 825, 828-829 (1) (627 SE2d 866) (2006) (citation and punctuation omitted).

> If the injury . . . would not have resulted but for the interposition of an independent and unforeseen cause, then the defendant's wrongful act would not be the proximate cause of the injury. But as long as the defendant's negligence proximately caused the injury of another, the crime has been committed, even if there are other factors which also are

8

proximate causes of the injury. Unlike the civil context, in the criminal context it simply is not relevant that the victim was negligent unless the defendant's conduct did not substantially contribute to the cause of the injury.

*Corbett*, 277 Ga. App. at 718 (1) (b) (citation, punctuation, and emphasis omitted).

"What constitutes proximate cause is undeniably a jury question and is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent." *McGrath*, 277 Ga. App. 829 (1) (citation and punctuation omitted).

As stated above, the State presented evidence that: (i) at the time of the accident, the weather was clear, the roads were dry and well-lit, and a pedestrian in the road would have been clearly visible; and (ii) a strong odor of alcohol was detected on Butler's breath, her eyes were glassy and bloodshot, and field sobriety testing indicated alcohol impairment. The State also presented evidence that alcohol consumption — and, in particular, a BAC level of 0.084 — slows a driver's reaction time. This evidence was sufficient for the jury to reasonably infer that Butler's alcohol consumption lowered her reaction time, impeded her ability to avoid hitting the victim, and resulted in her collision with the victim, and that, as a result, her commission of DUI per se or DUI less safe was the proximate cause of the victim's

9

death.[4] See *McGrath*, 277 Ga. App. at 829-830 (1); *Miller*, 236 Ga. App. at 827-829 (1)-(3); *Davis v. State*, 187 Ga. App. 517, 520-522 (3) (370 SE2d 779) (1988).

We note that an accident reconstructionist testified for the defense that: (i) the only source of light at the accident site would have been the headlights of Butler's car; (ii) Butler reacted like an average driver would once the victim was visible; and

---

[4] We note that the trial court charged the jury on vehicular homicide and proximate cause as follows:

> A person commits the offense of homicide by vehicle in the first degree when, without malice aforethought, that person causes the death of another person by driving or being in physical control of any motor vehicle while under the influence of alcohol to a degree that renders the person incapable of safely driving.

> The state has the burden of proving beyond a reasonable doubt that the defendant's conduct of driving under the influence was, in fact, the proximate cause of the victim's death. For an act to be considered a proximate cause of an injury, the injury must flow naturally and directly from the lawful act [sic] attributed to the defendant or be reasonably expected to result therefrom. And that cannot be considered a proximate cause if the injury would not have occurred but for the intervention of some independent unforeseen cause. The state must prove proximate cause beyond a reasonable doubt.

Butler does not challenge these instructions, which highlighted that (a) the State bore the burden of proving beyond a reasonable doubt that Butler's DUI violations were the proximate cause of the victim's injuries and (b) Butler's DUI violations could not be the proximate cause of the victim's injuries if they would not have occurred but for an intervening, independent, unforeseen cause.

10

(iii) an average person could not have avoided hitting the victim. The jury — as it apparently did — was free to resolve any inconsistencies between that evidence and the State's evidence in the State's favor. See *Browner v. State*, 296 Ga. 138, 141 (1) (765 SE2d 348) (2014) ("[r]esolving evidentiary conflicts and inconsistencies and assessing witness credibility are the province of the fact finder, not the appellate court," and the trier of fact is not required to accept the defense presented by the defendant); accord *Duncan v. State*, 183 Ga. App. 368, 370 (4) (358 SE2d 910) (1987) (even when there is a "sharp conflict in the evidence, the weight of the evidence and credibility of witnesses are questions for the triers of fact"); see also *Miller*, 236 Ga. App. at 829 (3) (it was for the jury to decide whether, absent the defendant's consumption of alcohol, the victim's death could have been avoided). The evidence thus was sufficient to support each of Butler's convictions. Her related claim that the trial court erred by failing to give a jury instruction on a pedestrian's duty while walking on a roadway is addressed in Division 4, below.

2. Butler contends that the trial court improperly weighed the evidence as the "thirteenth juror" under the "general grounds" pursuant to OCGA §§ 5-5-20 and 5-5-

11

21.[5] See *Smith v. State*, 300 Ga. 532, 534 (1) (796 SE2d 671) (2017). A motion for a new trial on these grounds, however, "is not properly addressed to [an appellate court,] as such a decision is one that is solely within the discretion of the trial court."[6] Id. at 534 (1) & n. 2; accord *Batten v. State*, 295 Ga. 442, 444 (1) (761 SE2d 70) (2014) (an appellate court "reviews the sufficiency of the evidence and not its weight"). This enumeration of error thus presents nothing for us to review. See *Smith*, 300 Ga. at 534 (1) & n. 2; *Batten*, 295 Ga. at 444 (1).

---

[5] These statutes provide:

In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury.

OCGA § 5-5-20.

The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding.

OCGA § 5-5-21.

[6] In its order denying Butler's motion for a new trial, the trial court expressly stated that it had exercised its discretion to evaluate the weight of the evidence and the jury's verdict under OCGA §§ 5-5-20 and 5-5-21.

12

3. Butler argues that the results of her BAC test were inadmissible because the test was not administered within three hours of the accident. She has not met her burden of showing error in this regard.

We generally review a trial court's evidentiary rulings for abuse of discretion. *McCoy v. State*, 332 Ga. App. 626, 628 (774 SE2d 179) (2015). "However, where, as here, a defendant has not timely objected to the evidence [before the trial court], we review for plain error." *Carmichael v. State*, 353 Ga. App. 64, 70 (2) (836 SE2d 184) (2019) (citation and punctuation omitted); see also OCGA § 24-1-103 (d) (a court may take notice of "plain errors affecting substantial rights" concerning evidentiary rulings even absent a contemporaneous objection). "To establish plain error, [an a]ppellant must identify an error that was not affirmatively waived, was clear and not open to reasonable dispute, likely affected the outcome of the proceeding, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Thompson v. State*, 304 Ga. 146, 151 (6) (816 SE2d 646) (2018); accord *Roberts v. State*, 305 Ga. 257, 263 (4) (824 SE2d 326) (2019). "Satisfying all four prongs of this standard is difficult, as it should be." *McGarity v. State*, 311 Ga. 158, 162-163 (2) (856 SE2d 241) (2021) (citation and punctuation omitted).

Butler has identified no legal authority standing for the proposition that a BAC test performed more than three hours after an accused last drove is inadmissible. While OCGA § 40-5-55 (a), cited in her brief, provides that BAC tests must be "administered as soon as possible" to anyone operating a motor vehicle who is involved in an accident resulting in serious injuries, that statute is not, on its face, a rule of evidence, and Butler cites no authority interpreting that statute as a rule of admissibility.[7] Consequently, Butler has not met her burden of showing that the trial court erred, plainly or otherwise, in this regard. See *Roberts*, 305 Ga. at 263 (4); *Thompson*, 304 Ga. at 151 (6); see also *Wilson v. State*, 351 Ga. App. 794, 798 (1) (b) (833 SE2d 175) (2019) ("An error is plain if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point.") (citation and punctuation omitted).

---

[7] As stated above, while the DUI per se statute criminalizes driving with a BAC level of 0.08 grams or more "within three hours after such driving . . . from alcohol consumed before such driving . . . ended," OCGA § 40-6-391 (a) (5), it "does not require that the person be tested within three hours." *Yarbrough*, 241 Ga. App. at 782 (4) (c). We do not address Butler's assertion in her appellate brief that the trial court failed to comply with "*State v. Allen*," as she provides no citation for any such decision. And while Butler raises several arguments in this enumeration of error directed toward the sufficiency of the evidence to support her DUI per se conviction, we reject her challenges in that regard for the reasons stated above in Division 1 (b).

14

4. Butler asserts that the trial court erred when it rejected her request to provide a jury instruction regarding OCGA § 40-6-95.[8] That statute provides, in relevant part: "A person who is under the influence of intoxicating liquor or any drug to a degree which renders him a hazard shall not walk or be upon any roadway or the shoulder of any roadway." After an extended discussion during the charge conference, the trial court declined to give the instruction but also stated that, in conjunction with that decision, it would not give an instruction requested by the State to the effect that "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway *unless he has already, and under safe conditions, entered the roadway*." (Emphasis supplied.) When the trial court initially stated its decision in that regard, defense counsel responded, "I don't disagree with any of that analysis, Judge. We're amenable to that." After the trial court provided additional explanation for its decision, however, defense counsel responded, "Understood, Judge. We just note our exception."

---

[8] Contrary to Butler's assertion in her appellate brief, this proposed instruction was included in her supplemental request no. 3, not in her request no. 14.

Butler's claim that the trial court erred by failing to charge the jury on OCGA § 40-6-95 is premised primarily on *State v. Ogilvie*, 292 Ga. 6 (734 SE2d 50) (2012), and *Miller*, 236 Ga. App. 825. As relevant here, in *Ogilvie*, our Supreme Court held that: (i) "a jury charge on the defense of accident to a strict liability traffic offense is available only where there is evidence . . . that the defendant did not voluntarily commit the prohibited act"; and (ii) a jury charge on the defense of lack of proximate cause is warranted where a defendant claims that she could not avoid a collision due to an unforeseen, intervening cause. 292 Ga. at 9 (2) (b), 11-12 (2) (d)-(e). Contrary to Butler's claim, however, the *Ogilvie* Court did not hold that a trial court "must also charge the proper rules of the road statutes involving pedestrian duty." See generally id. *Ogilvie* thus does not support Butler's claim of error.

We held in *Miller*, in relevant part, that both "negligence by the defendant in operating his vehicle and the behavior of the victim remain relevant" in determining whether the State has met its burden of establishing that a defendant's conduct was the proximate cause of a victim's death in a vehicular-homicide case. 236 Ga. App. at 828 (2). We did not, however, hold that a trial court must charge the jury on pedestrian rules of the road in cases in which a pedestrian victim is alleged to have

16

been violating any such rule at the time he was struck by a car. See generally id. *Miller* therefore also does not support Butler's claim of error.

Moreover, Butler's reliance on several appellate decisions addressing the duties of injured parties in civil traffic cases also is misplaced for multiple reasons. First, none of those decisions addressed issues involving jury instructions on pedestrian rules of the road, much less the propriety of such instructions in criminal cases. See generally *Politzer v. Xiaoyan*, 342 Ga. App. 224 (801 SE2d 114) (2017); *Moore v. Camara*, 317 Ga. App. 651 (732 SE2d 319) (2012); *Tucker v. Love*, 200 Ga. App. 408 (408 SE2d 182) (1991); *Johnson v. Ellis*, 179 Ga. App. 343 (346 SE2d 119) (1986). Second, in each of those cases, there was no evidence of any wrongdoing by the defendant. See *Politzer*, 342 Ga. App. at 227 (2); *Moore*, 317 Ga. App. at 653; *Tucker*, 200 Ga. App. at 409 (1); *Johnson*, 179 Ga. App. at 345. Here, however, there was evidence that Butler was driving while impaired and that a pedestrian in the road where the collision occurred would have been clearly visible. Finally, as discussed above, in a vehicular-homicide case

> as long as the defendant's negligence proximately caused the injury of another, the crime has been committed, even if there are other factors which also are proximate causes of the injury. *Unlike the civil context, in the criminal context it simply is not relevant that the victim was*

17

*negligent unless the defendant's conduct did not substantially contribute to the cause of the injury*.

*Corbett*, 277 Ga. App. at 718 (1) (b) (citation and punctuation omitted). For each of the above reasons, Butler has not met her burden of showing that the trial court was required to charge the jury on pedestrian rules of the road, regardless of whether she sufficiently preserved this issue for appellate review.

5. A medical examiner ("ME") testified about an autopsy performed on the victim. During his direct examination, the State asked the ME about the effects of alcohol on the body. The ME responded that alcohol is a depressant that impairs one's judgment and can blur vision and slow reaction time. When asked about the effects of a 0.084 BAC level, the ME described tests in which "something [is] flash[ed]" in front of subjects to determine their reaction times, which showed that a BAC level of 0.08 rendered "almost everybody . . . impaired to a significant degree." Butler contends that the ME's testimony in this regard violated her right to due process of law because the State neither informed the defense that the ME would offer an opinion on the effects of alcohol nor qualified the ME as an expert "in that area."

Because Butler did not contemporaneously object to the ME's testimony in this regard, we review this enumeration of error — which essentially implicates the admissibility of the ME's testimony — for plain error. See *Carmichael*, 353 Ga. App. at 70 (2); see also OCGA § 24-1-103 (d). At trial, the State also presented the testimony of an expert in forensic toxicology, who told the jury that, because alcohol is a central nervous system depressant, a person with a BAC level of 0.084 will experience decreased inhibitions, loss of coordination and fine-motor and critical-thinking skills, increased self-confidence and risk-taking, greater difficulty distinguishing between good and bad decisions, and slower information-processing. The expert further testified that such a driver could take longer to comprehend what they see, make a decision about it, and apply brakes, if needed.

Given that the ME's challenged testimony was largely cumulative of the State's expert's testimony as to the effects of alcohol consumption, Butler cannot establish that the ME's testimony likely affected the outcome of her trial. She therefore has not met her burden of showing plain error in this regard. See *Roberts*, 305 Ga. at 263 (4); *Thompson*, 304 Ga. at 151 (6).

6. Butler asserts that her prison sentence violates the Eighth Amendment's prohibition on cruel and unusual punishments in light of several health issues that affect her. She again has not met her burden of showing trial court error.

"A punishment is cruel and unusual if it (1) makes no measurable contribution to accepted goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *McCrosky v. State*, 234 Ga. App. 321, 323 (3) (506 SE2d 400) (1998) (citation and punctuation omitted). A sentence within the statutory limits is presumed not to violate the Eighth Amendment's prohibition on cruel and unusual punishment unless "a defendant sets forth a factual predicate showing that such legislatively authorized punishment was so overly severe or excessive in proportion to the offense as to shock the conscience." *Hill v. State*, 259 Ga. App. 363, 365 (2) (577 SE2d 61) (2003) (citation and punctuation omitted); accord *McCrosky*, 234 Ga. App. at 323 (3) ("Legislative discretion must be deferred to unless, under the circumstances, the sentence shocks the conscience.") (citation and punctuation omitted).

Butler, who was born in 1990, has been diagnosed with epilepsy, esophagitis (inflamation of the esophagus),[9] hypertension, macrocytosis (abnormally large red blood cells),[10] and iron deficiency. She also has experienced fatigue, weight loss, fever, chills, night sweats, anxiety, depression, and hallucinations and takes numerous medications for her conditions. Butler claims that, since her imprisonment, her condition has "deteriorated" and that prison officials have been deliberately indifferent to her medical needs. She further contends that she is "very susceptible" to contracting COVID-19 while incarcerated.

Butler's sentence of seven years in prison, to be followed by eight years on probation, is within the statutory range of punishments available for her vehicular-homicide conviction. See OCGA § 40-6-393 (a) (a person convicted of first-degree vehicular homicide "shall be punished by imprisonment for not less than three years nor more than 15 years"). Moreover, she has not cited, and research has not revealed, any binding precedent supporting her claim that a sentence within the statutory limits may violate the Eighth Amendment's prohibition on cruel and unusual punishment

---

[9] See https://www.webmd.com/digestive-disorders/esophagitis (last visited Mar. 9, 2022).

[10] See https://www.webmd.com/a-to-z-guides/what-is-macrocytosis (last visited Mar. 9, 2022).

based solely on a defendant's medical conditions or health issues. See generally *Jones v. State*, 246 Ga. App. 857, 858 (1) (542 SE2d 584) (2000) (concluding that a sentence of two years in prison, to be followed by eight years on probation, for the crime of misuse of a firearm while hunting, imposed on a 68-year-old disabled defendant with a heart condition was not cruel and unusual, notwithstanding a doctor's testimony that incarceration "would shorten [the defendant]'s life to a number of weeks"); *McCrosky*, 234 Ga. App. at 322-323 (2)-(3) (holding that a sentence of six months in jail and six months of probation for criminal trespass, imposed on a defendant who suffered from hypertension, was not cruel and unusual). Butler also has identified no record evidence or legal authority indicating that her medical conditions render her prison sentence grossly disproportionate to the severity of her crimes or, for that matter, to prison sentences imposed on other defendants with health issues. Finally, to the extent that Butler seeks to challenge the conditions of the particular prison in which she is incarcerated or the actions of prison officials with respect to her well-being in prison — rather than the length of her sentence — any such claim must be raised in a proceeding in which the prison officials are named as parties, as the conduct of such officials is not at issue in a criminal prosecution. See generally *Minor v. Barwick*, 264 Ga. App. 327, 333 (1) (590 SE2d 754) (2003)

22

("[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment," and may be redressed in an action against prison officials under 42 USC § 1983) (citation and punctuation omitted). For these reasons, she has not shown that the trial court erred when it rejected her Eighth Amendment challenge to her sentence.

7. Butler contends that a juror violated her right to due process by failing to disclose during voir dire that the juror "previously prosecuted and provided testimony against" Butler in a prior child abuse criminal proceeding. We discern no reversible error.

While a defendant "has the right to trial by a fair and impartial jury, . . . an incorrect response given by a potential juror on voir dire does not necessarily call for a new trial." *Green v. State*, 295 Ga. 108, 110 (2) (757 SE2d 856) (2014).

> The determinative question is whether there exists bias on the part of the juror which results in prejudice to the defendant. If the prospective juror's response was given in good faith without the deliberate intent to mislead, the trial court may well find that no prejudice resulted. . . . The question of juror impartiality is one of both law and fact, and a trial court's findings on the question will be set aside only where manifest prejudice to the defendant has been shown. Indeed, in order for a defendant to be entitled to a new trial because of voir dire examination, the defendant has to show both that the juror failed to answer honestly

23

> a material question, and that a correct response would have provided a
> valid basis for a challenge for cause.

Id.; accord *Downey v. State*, 298 Ga. 568, 571 (3) (783 SE2d 622) (2016). And a juror's knowledge of a party "provides a basis for disqualification only if it is shown that it has resulted in the juror having a fixed opinion of the accused's guilt or innocence or a bias for or against the accused." *Green*, 295 Ga. at 111 (2).

During voir dire, potential jurors were asked if any of them knew or recognized Butler. The transcript contains no indication that any of them responded affirmatively. During the hearing on Butler's motion for a new trial, she testified that one of the jurors who heard her case also had done some work on a Division of Family & Children Services case involving Butler and her children at some point in the past. Butler did not, however, present any evidence showing that the juror in question remembered her (and thus was dishonest during voir dire), much less that, had the juror indicated that the juror remembered her, the juror would have been disqualified on that ground. She thus has not met her burden of showing trial court error in this regard. See *Green*, 295 Ga. at 110-111 (2); see also *Downey*, 298 Ga. at 572 (3) & n. 8 (concluding that the defendant's failure to show that a juror answered voir dire

questions "dishonestly" was fatal to his claim that he was denied a trial by a fair and impartial jury due to a juror's failure to disclose relationships with law enforcement).

8. During deliberations, the jury submitted the following question to the trial court: "Is it Georgia law for pedestrians right of way [sic]? Regardless of whether they were on the crosswalk or not?" Following an extended discussion between the trial court, the State, and defense counsel, both parties agreed that the court would tell the jury that the court already had provided it with the law relevant to this question. Consequently, in response to the question, the court instructed the jury: "The court has read to you all the law that's applicable to that issue." Neither party objected to the instruction.

Butler contends on appeal that the trial court violated her right to due process when it failed to (a) sufficiently respond to the jury's question and (b) charge the jury on OCGA § 40-6-95.[11] By agreeing with the trial court's decision to tell the jury that the court already had provided the law applicable to the jury's questions, however, Butler invited any potential error in that regard and thus has waived appellate review of this issue. See *Hughes v. State*, 310 Ga. 453, 457 (2) (b) (851 SE2d 580) (2020) (concluding that, by agreeing with the trial court's decision to re-read the applicable

---

[11] See Division 4, above, for a discussion of that statute.

25

counts of the indictment in response to a jury question during deliberations, the defendant "affirmatively waived" his right to challenge that decision on appeal); accord *Glover v. State*, 285 Ga. 461, 463 (3) (678 SE2d 476) (2009) (the defendant waived appellate review of the trial court's response to a jury question by failing to object to the response when invited to do so); see also *Hicks v. State*, 295 Ga. 268, 275 (2) (759 SE2d 509) (2014) ("[B]ecause appellant expressly told the trial court that it should not answer the [jury's] question, appellant invited the alleged error, and it therefore provides no basis for reversal.") (citation and punctuation omitted); *Holt v. State*, 248 Ga. App. 334, 336 (1) (546 SE2d 83) (2001) ("[I]nduced error does not furnish a basis for appeal.").

9. In her final two enumerations of error, Butler asserts that prison personnel violated her constitutional rights to assist her counsel in this appeal by destroying and/or withholding from her several legal documents, including privileged communications. We discern no reversible error in this regard.

"This Court is an appellate court for the correction of errors of law made by the trial court, which have as their bases specific rulings made by the trial court." *Amica v. State*, 307 Ga. App. 276, 282 (2) (704 SE2d 831) (2010) (citation and punctuation omitted); accord *Rogers v. State*, 298 Ga. App. 895, 903 (6) (681 SE2d 693) (2009)

26

("[T]his is a court for review and correction of error committed in the trial court.") (citation and punctuation omitted); *Jackson v. State*, 252 Ga. App. 16, 17 (2) (555 SE2d 240) (2001) ("[T]his is a court for correction of errors of law committed by the trial court where proper exception is taken . . . .") (citation and punctuation omitted). Thus, claims on appeal from a criminal conviction that do not call into question rulings by the trial court provide no basis for reversal. *McKeever v. State*, 353 Ga. App. 264, 265 (4) (836 SE2d 631) (2019).

Here, as is the case with Butler's Eighth Amendment claims, her contentions that prison personnel destroyed legal documents or withheld them from her do not implicate any rulings made by the trial court (or, for that matter, any acts committed by the State) during her criminal prosecution, but rather concern matters entirely outside the scope of her trial court criminal proceedings. Consequently, any such issues are not properly before this Court in this direct criminal appeal, which concerns only the legality of Butler's criminal trial. See generally *McKeever*, 353 Ga. App. at 265 (4); *Amica*, 307 Ga. App. at 282 (2); *Rogers*, 298 Ga. App. at 903 (6); *Jackson*, 252 Ga. App. at 17 (2); see also generally OCGA §§ 5-5-20 through 5-5-25 (setting forth the grounds on which a new trial may be granted).

27

Regardless (and on a related note), Butler's claim on this issue fails for the additional reason that she has neither identified any documents (including privileged communications) that were withheld from her[12] or disclosed to others nor pointed to anything in the record indicating how the outcome of her trial would have been different absent the alleged malfeasance by prison personnel. "An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful." *Holt*, 248 Ga. App. at 337 (3) (citation and punctuation omitted). This enumeration of error thus provides no basis for reversal.

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*

---

[12] Although Butler claims that "pages and exhibits" were removed from her copy of her trial transcript, she does not identify any such pages or exhibits.